#26143-a-DG

**2012 S.D. 48**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

THE SURGICAL INSTITUTE OF
SOUTH DAKOTA, P.C.,                    Plaintiff and Appellant,

     v.

MATTHEW J. SORRELL, M.D.,                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICIA C. RIEPEL
Judge

\* \* \* \*

JAMES E. MOORE
SCOTT HENDRICKS LEUNING
JAMES A. POWER of
Woods Fuller Shultz & Smith P.C.
Sioux Falls, South Dakota                    Attorneys for plaintiff
and appellant.


ALEX M. HAGEN
BRETT A. LOVRIEN
STEPHEN C. LANDON of
Cadwell, Sanford, Deibert & Garry, LLP
Sioux Falls, South Dakota                    Attorneys for defendant
and appellee.

\* \* \* \*

ARGUED APRIL 18, 2012

OPINION FILED **06/20/12**

GILBERTSON, Chief Justice

[¶1.]     A medical practice filed suit against a surgeon formerly employed at that practice, alleging breach of contract by failing to give required notice of resignation and breach of an implied contract resulting in unjust enrichment.  The implied contract claim was dismissed by summary judgment, which the practice appeals.  The jury subsequently found the surgeon did not breach the contract.  We affirm.

**FACTS**

[¶2.]     Dr. Matthew Sorrell was an employee, director, and shareholder at the Surgical Institute (the Institute) in Sioux Falls, South Dakota.  Dr. Sorrell began practicing general surgery at the Institute in 2000.  In 2002, he became a shareholder.  Dr. Sorrell signed an Employment Agreement and Shareholders' Agreement (collectively, "the contracts") in 2006.  Neither contract addressed extended leave for additional training.

[¶3.]     In 2007, Dr. Sorrell expressed an interest in applying for a fellowship to receive training as an intensivist, specializing in critical care.  At the time, the Institute had six surgeons.  Dr. Sorrell's proposed leave would burden the other five surgeons, who would have to cover trauma calls for a full year with five surgeons instead of six.  The Shareholders' Agreement only permitted military leave.  After meeting, the shareholders approved Dr. Sorrell's requested leave and amended the Shareholders' Agreement accordingly.  The amendment allowed a doctor to have extended leave for a fellowship and to receive deferred compensation.  The

amendment did not address fringe financial benefits such as malpractice coverage or health insurance.

[¶4.]    Dr. Sorrell obtained a one-year fellowship, beginning in July 2007. The fellowship included a stipend, but Dr. Sorrell also obtained a forgivable fellowship loan from Avera-McKennan Hospital.  The loan would not have to be repaid so long as Dr. Sorrell returned to Sioux Falls and practiced surgery, trauma, and critical care medicine for two years.  As a condition for the loan, Dr. Sorrell could not be subject to a covenant not to compete.  The Institute agreed by written amendment to his Employment Agreement to suspend Dr. Sorrell's covenant not to compete until the loan was repaid.

[¶5.]    Dr. Sorrell returned to Sioux Falls in April 2008 and attended a shareholders' meeting.  There was testimony that the practice was having some internal problems and that Dr. Sorrell did not feel as though the meeting solved many of them.  Dr. Sorrell was friends with another surgeon at the Institute, Dr. Don Wingert.  The two men had previously discussed problems with the practice. On June 10, 2008, Dr. Sorrell called Dr. Wingert and indicated he did not intend to return to the Institute permanently.  Dr. Wingert told other members at the Institute about the conversation.  Dr. Sorrell did not respond to an email from the executive director asking if he was leaving.  On June 13, 2008, the Institute sent Dr. Sorrell a letter confirming his voluntary termination of employment without cause. There were other subsequent communications indicating Dr. Sorrell's willingness to return for nine months, to cover weekend call, or "help out."

[¶6.]     The Institute sued Dr. Sorrell in September 2008, asserting two claims.  First, the Institute claimed Dr. Sorrell breached his Employment Agreement by failing to give nine-month notice before leaving.  Second, the Institute alleged that Dr. Sorrell breached an implied contract by receiving financial benefits from the Institute during his fellowship and then not returning, resulting in unjust enrichment.  Dr. Sorrell counterclaimed, demanding payment for his stock; claiming the Institute violated a confidentiality provision and wrongfully interfered with a prospective business advantage; and that the Institute owed him compensation under his employment contract.  Thereafter, Dr. Sorrell voluntarily dismissed his breach of confidentiality claim.  The circuit court dismissed his counterclaim for tortious interference and dismissed the Institute's claim for breach of an implied contract resulting in unjust enrichment.  The Institute then filed an amended complaint in August 2010.  The Institute alleged breach of a written contract, which was the same as the original complaint, and replaced the implied contract equitable claim with breach of an oral contract, i.e., not returning to the practice even though he promised he would.[1]

[¶7.]     At trial, the primary issues were the Institute's claim for breach of contract for failure to give required notice and Dr. Sorrell's counterclaim for the value of his shares and unpaid wages.  The jury found by special interrogatory verdict form that Dr. Sorrell did not terminate his employment without giving the

---

1.    The circuit court granted summary judgment on the claim for breach of an oral contract.  That decision was not appealed.

required notice. Dr. Sorrell was awarded a sum of money for his shares and deferred compensation. The Institute appeals. We address the following issues:

1.  Whether the Institute is entitled to a new trial.

2.  Whether the circuit court erred in granting summary judgment on the equitable claim for breach of an implied contract resulting in unjust enrichment.

## ANALYSIS

[¶8.]    **1.    Whether the Institute is entitled to a new trial.**

*a.    Whether the circuit court abused its discretion in denying the Institute's motion for a new trial based on insufficient evidence.*

[¶9.]    "'The decision to grant a new trial is left in the sound judicial discretion of the trial court' and the 'decision will not be disturbed absent a clear showing of abuse of discretion.'" *Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 2011 S.D. 45, ¶ 18, 801 N.W.2d 752, 757 (quoting *Sherburn v. Patterson Farms, Inc.*, 1999 S.D. 47, ¶ 8, 593 N.W.2d 414, 416). "All inferences are indulged in favor of the nonmoving party; if competent evidence exists to support the verdict, it will be upheld." *Baddou v. Hall*, 2008 S.D. 90, ¶ 33, 756 N.W.2d 554, 562 (citations omitted).

[¶10.]    The special verdict form to the jury asked: "Did [Dr. Sorrell] fail to provide [the Institute] with nine months' notice of the termination of his employment?" The jury answered no. The Institute made a motion for a new trial under SDCL 15-6-59(a)(6), insufficient evidence to justify the verdict, which the circuit court denied. As grounds for its motion, the Institute asserted that "the fact of breach was undisputed." After a hearing, the circuit court denied the motion by

order.  The transcript from the hearing was not included as part of the record and the court's order does not explain why the motion was denied.[2]

[¶11.]	The Institute asserts that on June 10 Dr. Sorrell indicated to Dr. Wingert that "he would not return as a full-time employee after the fellowship ended."  On June 13, less than three days after this conversation, the Institute sent Dr. Sorrell a letter confirming his voluntary termination of employment without cause.  The Institute argues that this evidence is undisputed, and therefore, there was insufficient evidence to support the jury's verdict that Dr. Sorrell did not commit a breach.  A review of the record, however, reflects that the evidence regarding a breach was disputed.  Contrary to the Institute's argument, there is some evidence that during the June 10 call, Dr. Sorrell told Dr. Wingert that he did not intend to stay with the Institute long-term, but that he intended to continue working for nine months and that he therefore did not breach.  There is also some evidence supporting the theory that the Institute prevented Dr. Sorrell from giving notice due to the June 13 letter.

[¶12.]	Dr. Sorrell presented the theory at trial that his June 10 conversation with Dr. Wingert was not a resignation effective immediately.[3]  The jury could have

---

2.	On appeal, the Institute argues that there is insufficient evidence to support this verdict because Dr. Sorrell's conversation with Dr. Wingert constituted an anticipatory repudiation.  There is no indication this argument was raised below and testimony from the record does not support this conclusion.

3.	The Employment Agreement addresses termination.  Under certain circumstances, employment would terminate immediately.  There is no assertion any of those circumstances apply here.  Termination could also be for cause, or without cause by physician, or without cause by the Institute.

(continued . . .)

believed the testimony that his June 10 call was part of "a series of discussions that we had been having that began in April where it was in earnest that now I felt I will probably have to leave this practice . . . and it ended up being the last [discussion] because of what transpired after." Dr. Sorrell testified that on June 10, as part of this on-going discussion, he told Dr. Wingert that he "didn't want to come back to the practice as it was . . . and I wanted to take up his offer that I felt was given to me to work outside of the group and stay in town." He also testified that coming back to the Institute was not "a long-term, viable option." From this testimony, the jury could have inferred that Dr. Sorrell intended to fulfill his nine-month obligation, only not intending to stay with the Institute long-term.

[¶13.]     The Institute argues that agreeing to cover call is not necessarily agreeing to return for nine months. However, Dr. Sorrell testified that he "offered to stay as long as the group needed me to stay to cover call *and help out*." (Emphasis added.) There is other testimony from Dr. Sorrell indicating he was willing to work with the Institute after returning. The jury could have concluded that Dr. Sorrell was resigning in the long-term, but was planning to return after his fellowship to fulfill his commitments.

---

(. . . continued)

> The clauses for termination for cause or termination without cause by physician both require written notice. It is undisputed that Dr. Sorrell did not provide written notice of resignation. The only written notice was the Institute's June 13 letter indicating that Dr. Sorrell had "voluntarily terminated employment with Surgical Institute without cause." The jury could have relied on the Employment Agreement and Institute's letter in concluding that Dr. Sorrell had not resigned, but was terminated by the Institute, and consequently did not breach the notice requirement.

[¶14.]     There was also evidentiary support for the jury to find that the Institute prevented Dr. Sorrell from giving notice. First, Dr. Sorrell testified that he did not get the opportunity to give his notice because of the Institute's June 13 letter. He further testified that the letter did not reflect the substance of the phone conversation with Dr. Wingert. Dr. Sorrell specifically disputed that he had voluntarily resigned in the call. Also, the Executive Director for the Institute, Mark Hatting, testified that once Dr. Sorrell indicated he did not plan to return long-term, the other shareholders made a decision that they did not want him back at all. After Dr. Wingert suggested at a board meeting of the Institute that the June 13 letter may have gone out too soon, two doctors responded that they did not want Dr. Sorrell back. Dr. David Strand testified that the Institute was not interested in having Dr. Sorrell return after the June 10 call, despite his willingness to do so. Dr. Brad Thaemert testified that after the phone call and letter, "we realized we have a major trust issue of going any further no matter what is going to happen. And that trust issue was multiple things: financial issues and patient care issues . . . ." The Institute even concedes in its brief that it "unsurprisingly was not interested in having its patients seen by a doctor who had no desire to be part of its practice group, was not subject to a covenant not to compete, and intended to work elsewhere in Sioux Falls." Finally, Hatting testified that the Institute members had a financial incentive not to have Dr. Sorrell return. If he failed to give appropriate notice, they could retain his outstanding accounts receivable rather than paying him.

[¶15.] In reviewing the record in a light most favorable to the jury's verdict, the Institute has not demonstrated there was insufficient evidence to support the jury's verdict. The jury could reasonably have found based on all the evidence and testimony that Dr. Sorrell had not "resigned" on June 10 without giving notice, or that he was preemptively terminated by the June 13 letter. The jury could have credited this testimony and found that Dr. Sorrell had not breached the notice requirement, especially in light of the Institute's termination letter and subsequent actions. We have previously said that "a jury's verdict should not be set aside 'except in extreme cases where it is the result of passion or prejudice or the jury has palpably mistaken the rules of law . . . .'" *Morrison v. Mineral Palace Ltd. P'ship*, 1999 S.D. 145, ¶ 10, 603 N.W.2d 193, 196 (quoting *Stoltz v. Stonecypher,* 336 N.W.2d 654, 657 (S.D. 1983)). The extreme remedy of reversing the circuit court's decision not to grant a new trial is not warranted in this case.[4]

b. *Whether the circuit court abused its discretion in excluding evidence that Dr. Sorrell "promised" to return to the Institute after his fellowship.*

[¶16.] Normally, "[w]e afford broad discretion to circuit courts in deciding whether to admit or exclude evidence." *Ronan v. Sanford Health*, 2012 S.D. 6, ¶ 8, 809 N.W.2d 834, 836. "The trial court's evidentiary rulings are presumed correct and will not be overturned absent a clear abuse of discretion. An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly

---

4. The court limited the Institute's damages for breach of the notice provision to nine months. The Institute argues that it should be able to seek all damages caused by Dr. Sorrell's failure to give timely notice, arguments which should be made to a jury. Because we affirm the verdict, the issue is not addressed.

against reason and evidence." *Id.* (quoting *St. John v. Peterson,* 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74).

[¶17.]     The Institute asserts that the circuit court abused its discretion in excluding evidence that, at the time Dr. Sorrell was given the leave of absence, he promised to return after his fellowship. Dr. Sorrell made a motion in limine to exclude the evidence because (1) it is inadmissible under the parol evidence rule and (2) the evidence is not relevant to the "notice issue and would only be prejudicial and likely to confuse the jury." The court granted the motion. The court did not discuss why it was excluding the evidence in its order. A hearing was apparently held on the motion in limine, but the transcript was not included in the record. Although we do not know the precise basis for the court's ruling, we agree that the evidence was not relevant and was likely to confuse the jury.

[¶18.]     "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." SDCL 19-12-1 (Rule 401). Dr. Sorrell's alleged oral promises to return became irrelevant after the circuit court granted summary judgment dismissing the Institute's amended complaint claiming breach of an oral agreement. The issue before the jury was only whether Dr. Sorrell breached his contract by failing to provide required notice of resignation. Evidence of Dr. Sorrell's promises to return, made during or before his fellowship, was not relevant to whether he later gave (or was prevented from giving) the required nine-month notice.

[¶19.] Even if the evidence was relevant, it could have potentially confused the jury. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury. SDCL 19-12-3 (Rule 403). Had earlier alleged promises to return been allowed into evidence, it is possible the jury could have erroneously concluded that Dr. Sorrell breached merely by not returning as "promised." Accordingly, even if the evidence was relevant, it was properly excluded under SDCL 19-12-3 (Rule 403). Also, the Institute has not shown that it was prejudiced by the exclusion of the evidence. We affirm.

[¶20.] **2. Whether the circuit court erred in granting summary judgment on the equitable claim for breach of an implied contract resulting in unjust enrichment.**

[¶21.] The Institute argues the circuit court erred in granting summary judgment on the equitable claim for breach of an implied contract resulting in unjust enrichment. After the court granted summary judgment, the Institute amended its complaint without re-alleging the equitable claim. Dr. Sorrell argues that because the Institute's amended complaint did not allege the equitable claim again, the Institute waived its right to appeal the grant of summary judgment.

[¶22.] Generally, an amended complaint supersedes an original complaint. *See Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001); *see also* 6 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1476 (3d ed. 2011 update) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified."). Despite this rule, courts have determined that a "plaintiff need not

replead dismissed claims in an amended complaint to preserve the right to appeal the dismissal." *Wangler v. Lerol*, 670 N.W.2d 830, 840 (N.D. 2003)(citing *Young v. City of Mount Ranier,* 238 F.3d 567, 572-73 (4th Cir. 2001); *In re Crysen/Montenay Energy Co.,* 226 F.3d 160, 162 (2d Cir. 2000); *Dunn v. Air Line Pilots Ass'n,* 193 F.3d 1185, 1191 n.5 (11th Cir. 1999); *Parrino v. FHP, Inc.,* 146 F.3d 699, 704 (9th Cir. 1998); *USS-POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council,* 31 F.3d 800, 811-12 (9th Cir. 1994); *Davis v. TXO Prod. Corp.,* 929 F.2d 1515, 1517-18 (10th Cir. 1991); *Wilson v. First Houston Inv. Corp.,* 566 F.2d 1235, 1238 (5th Cir. 1978), *vacated on other grounds,* 444 U.S. 959, 100 S. Ct. 442, 62 L. Ed. 2d 371 (1979); 35A C.J.S. *Federal Civil Procedure* § 445 (2003)).

[¶23.]     In general, these courts have determined that requiring a plaintiff to replead dismissed claims is "needlessly formalistic." *Young,* 238 F.3d at 572. "By dismissing the claims . . . [the] court has quite clearly given its view of the viability of the claims, a view not made any clearer or more final by requiring the plaintiff to re-allege the already rejected claims." *Id.* Additionally, some plaintiffs may be hesitant to replead a dismissed claim, fearing sanctions, and unknowingly fail to preserve their claim for appeal. *See Davis,* 929 F.2d at 1518 n.2; *USS-POSCO Indus.,* 31 F.3d at 812. This reasoning is persuasive. Accordingly, the Institute was not required to replead its implied contract claim and the grant of summary judgment on the Institute's equitable claim is appropriate for appellate review.

[¶24.]     The Institute argues that the circuit court should not have dismissed its equitable claim by summary judgment. The Institute asserts that an implied contract was formed based on verbal promises by Dr. Sorrell that he intended to

return to the Institute after his fellowship. Based on these promises, the Institute's shareholders agreed to pay him financial benefits and deferred compensation while he was at his fellowship. The Institute further claims that these payments and benefits unjustly enriched Dr. Sorrell.

[¶25.]     Dr. Sorrell argues that the court was correct in granting summary judgment because the claim fails as a matter of law. The amendments to the contracts made changes to facilitate fellowship leave, but retained all other written provisions. Under the language of those written agreements, Dr. Sorrell was entitled to his employee benefits and deferred compensation payments. Because the language of the contracts addresses and controls the subjects of compensation and benefits, there was no need to derive an implied contract.

[¶26.]     The court granted summary judgment, saying at the hearing that "unjust enrichment and implied contract are not available here. We have a written employment agreement. We have a written addendum. The law requires that a written employment agreement can only be amended by the written amendment or an executed oral agreement." "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we determine whether the moving party has demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Danielson v. Hess*, 2011 S.D. 82, ¶ 8, 807 N.W.2d 113, 115. "Entry of summary judgment is mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." *Dakota Indus., Inc. v. Cabella's.com, Inc.*, 2009 S.D. 39, ¶ 11, 766 N.W.2d 510, 513.

[¶27.] The amendment to the Shareholders' Agreement changed the section addressing "leave" to allow for fellowship leave. It further provided that the shareholder with a leave of absence "shall be paid any compensation due under the Employment Agreement pursuant to the terms and conditions of such Employment Agreement for those periods during which the Shareholder was actually participating in the operations of the Corporation." The topics of compensation and leave were both covered in the Employment Agreement. The amendment to the Employment Agreement addressed termination of the non-competition provision, and then provided that "[a]ll other provisions of the Employment Agreement . . . shall remain unaffected."

[¶28.] "Where there is a valid express contract existing between parties in relation to a transaction fully fixing the rights of each, there is no room for an implied promise, or suit on quantum meruit." *Aetna Life Ins. Co. v. Satterlee*, 475 N.W.2d 569, 574 (S.D. 1991); *see also Jurrens v. Lorenz Mfg. Co. of Benson, Minn.*, 1998 S.D. 49, ¶ 6, 578 N.W.2d 151, 153 ("If a valid express contract exists, no implied contract need be inferred."); *Johnson v. Larson*, 2010 SD 20, ¶ 8, 779 N.W.2d 412, 416 ("[T]he equitable remedy of unjust enrichment is unwarranted when the rights of the parties are controlled by an express contract."). Following this rule, we examine the express contracts to determine if they fully fix the parties' rights.

#26143

[¶29.]     The contracts in this case address Dr. Sorrell's benefits. The amendments indicated that all provisions not directly changed by the amendments remained the same. The express writings address leave, compensation, and benefits. The amendment to the Shareholders' Agreement provided for deferred compensation benefits to a shareholder on leave. The Institute states in its brief that the fringe "benefits that Surgical Institute agreed to pay Dr. Sorrell were not documented in the amended Employment Agreement, but instead in corporate minutes." The minutes from a shareholders' meeting on June 13, 2007, reflect a discussion "regarding benefits [for Dr. Sorrell] to include health, disability, and 401(k) plan." The shareholders unanimously agreed to split all expenses equally. Under this written corporate resolution, Dr. Sorrell was entitled to those fringe benefits while on leave without qualification.[5] Therefore, the circuit court correctly concluded that written amendments and contracts occupied the field, precluding an equitable claim. We affirm.

**CONCLUSION**

[¶30.]     There was sufficient evidence at trial supporting the jury's verdict and the court, consequently, did not abuse its discretion in denying the motion for a new trial. Additionally, the Institute has not shown a "clear abuse of discretion" in excluding Dr. Sorrell's alleged promises to return to the practice after his fellowship. Finally, the Institute has not shown that the circuit court abused its

---

5.     Although the minutes reflect that one stockholder was motivated by his understanding that Dr. Sorrell was returning, another stockholder expressed a different motivation. Ultimately, all six stockholders voted in favor of a resolution that was not qualified by Dr. Sorrell's return.

discretion in granting summary judgment on the equitable implied contract claim. Affirmed.

[¶31.]	KONENKAMP, ZINTER, and SEVERSON, Justices, and MILLER, Retired Justice, concur.

[¶32.]	MILLER, Retired Justice, sitting for WILBUR, Justice, disqualified.