#26441-r-SLZ

**2013 S.D. 80**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

LISA LEWIS,                                    Plaintiff and Appellee,

    v.

SANFORD MEDICAL CENTER,                        Defendant and Appellant.


* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE KATHLEEN K. CALDWELL
Retired Judge

* * * *

RONALD A. PARSONS, Jr.
STEVEN M. JOHNSON
SHANNON R. FALON of
Johnson, Heidepriem &
  Abdallah, LLP
Sioux Falls, South Dakota           Attorneys for plaintiff
                      and appellee.


MELISSA C. HINTON
VINCE M. ROCHE of
Davenport, Evans, Hurwitz
  & Smith, LLP
Sioux Falls, South Dakota           Attorneys for defendant
                      and appellant.

* * * *

ARGUED SEPTEMBER 30, 2013

OPINION FILED **11/20/13**

#26441

ZINTER, Justice

[¶1.]     Lisa Lewis sued Sanford Medical Center for medical malpractice arising out of an attempted surgery that was aborted. Sanford admitted negligence but denied that its negligence proximately caused any of the damages Lisa sought to recover. Sanford also moved for summary judgment on a statute of limitations defense. The circuit court denied summary judgment. After a five-day trial, the jury returned a verdict in favor of Sanford, finding that Lisa did not suffer any damages legally caused by Sanford's negligence. Lisa moved for a new trial, arguing that the jury could not award "zero damages." The circuit court granted Lisa's motion. Sanford appeals arguing that the circuit court abused its discretion in granting a new trial. Alternatively, Sanford argues that the circuit court erred in denying summary judgment on its statute of limitations defense. We conclude that the circuit court erred in granting a new trial on Lisa's principal claim for damages associated with her cardiac problems. We further conclude that Lisa's remaining claim for damages for incisional pain was barred by the statute of limitations. We therefore reverse.

*Facts and Procedural History*

[¶2.]     On September 24, 2007, Lisa Lewis was admitted to Sanford for laparoscopic gastric band surgery. Before the surgery, Lisa underwent a number of pre-operative tests. The tests were designed to determine whether she was suffering from cardiac or other medical issues that could cause problems in surgery. The tests did not reveal indications of cardiac problems or of neck, back, or

abdominal pain. Similarly, on the day of the surgery, she was not experiencing any such pain or cardiac issues.

[¶3.] Lisa was sedated by an anesthesiologist before the surgery. Connie Bowar, a certified registered nurse anesthetist and an employee of Sanford, was assigned to assist the anesthesiologist. As part of the pre-surgery procedure, Bowar inserted an orogastric (i.e., mouth to stomach) tube into Lisa's stomach. The tube was intended to remove air and other contents from her stomach. However, Bowar mistakenly attached the tube to an oxygen supply rather than a suction device. The mistake caused Lisa's stomach to fill with pressurized oxygen. Sanford admitted that Bowar's mistake constituted negligence.

[¶4.] The mistake was not discovered until after the surgeon made his first laparoscopic incision into Lisa's abdomen. Because he immediately observed that something was wrong, the surgeon made four additional laparoscopic incisions to investigate whether the stomach had been perforated and whether there was any contamination in the abdominal cavity. Although he did not find a major perforation or contamination, he aborted the surgery because even a small stomach perforation could lead to an infection.

[¶5.] After the aborted surgery, Lisa was taken to a recovery room. While there, her heart rate dropped to thirty beats per minute, and she was given medication to increase the rate. Lisa's heart rate remained normal for the remainder of her stay in the recovery room. She was then moved to a regular hospital room. While in that room, her heart rate varied, dipping down into the thirties at times. Lisa was kept in the hospital overnight.

[¶6.] On September 25, 2007, the day after the aborted surgery, Lisa's heart rate dipped as low as twenty-six beats per minute. She was seen by a Sanford cardiologist. He diagnosed sick sinus syndrome and symptomatic bradycardia. The cardiologist indicated that these cardiac issues required the immediate implantation of a pacemaker, which was implanted the following day, September 26, 2007.

[¶7.] Before the pacemaker was implanted, Lisa began to complain of neck, back, shoulder, leg, and abdominal pain. She was given medication to relieve the pain. After the pacemaker was implanted, Lisa continued to have neck, back, and abdominal pain, and she was given medication to relieve that pain. Lisa was discharged from Sanford on September 27, 2007.

[¶8.] After her discharge, Lisa experienced problems with the pacemaker and continuing medical issues. She obtained further treatment at Sanford for those issues. The cause of her post-surgery problems was the issue at trial. Lisa claimed that the flow of oxygen into her stomach during the aborted surgery caused cardiac problems, which then caused the need for the pacemaker and additional medical problems. Sanford, however, contended that none of her claimed problems were caused by the aborted surgery.

[¶9.] Both parties called medical experts supporting their conflicting claims. Lisa's expert testified that the need for the pacemaker and Lisa's subsequent problems were caused by the aborted surgery. He also testified that Lisa's treatment at Sanford for the pacemaker and subsequent problems continued until September 2011. However, neither he nor Lisa testified that there was any

continuing treatment associated with the laparoscopic abdominal incisions after Lisa's discharge on September 27, 2007.

[¶10.]     Sanford's expert testified that Lisa's sick sinus syndrome, symptomatic bradycardia, need for a pacemaker and related complications, pain, and other problems were not caused by Sanford's negligence.  He testified that any cardiac problem caused by the surgery was only temporary.  He further testified that, even though Lisa's sick sinus syndrome was discovered and first diagnosed immediately after the surgery, it was a preexisting condition.

[¶11.]     Lisa commenced this suit on October 7, 2010, more than three years after her September 27, 2007 discharge from the hospital.  Sanford moved for summary judgment.  It argued that Lisa's claim was barred by the two-year medical malpractice statute of limitations.  Sanford also argued that the limitations period was not tolled under the continuing treatment doctrine.  The circuit court denied the motion, concluding that genuine issues of material fact existed as to when continuing treatment associated with the negligence ended.

[¶12.]     After a five-day trial, the jury returned a verdict in favor of Sanford. The jury found that Lisa did not suffer any damages legally caused by Sanford's negligence.  Because the jury's finding on causation and damages disposed of the case in favor of Sanford, the jury did not consider any statute of limitations questions.

[¶13.]     Lisa moved for a new trial.  She admitted that there was conflicting evidence regarding the cause of her need for the pacemaker and her subsequent medical problems.  Therefore, she conceded that it "was within the jury's

prerogative" to find against her on that claim, and she brought her motion for a new trial on another claim. She argued that there was no dispute that the laparoscopic abdominal incisions made in the course of the aborted surgery caused discomfort and pain, and the jury erred in not awarding some damages for that incisional pain. The circuit court granted a new trial, but not on Lisa's claim that she was entitled to a new trial to determine damages for incisional pain. The court's written decision reflects that it granted a new trial on the claim for damages for the cardiac problems—the claim that Lisa had conceded was within the jury's prerogative to find against her.

[¶14.]     Sanford appeals. It argues that the circuit court abused its discretion in granting a new trial. Alternatively, Sanford argues that the circuit court erred in denying its motion for summary judgment on its statute of limitations defense. Because the court ultimately allowed a reconsideration of all issues, we review the court's decision granting a new trial on both the claim for cardiac problems and the claim for damages for incisional pain.

*Decision*

[¶15.]     "If the trial court finds an injustice has been done by the jury's verdict, the remedy lies in granting a new trial." *Waldner v. Berglund,* 2008 S.D. 75, ¶ 11, 754 N.W.2d 832, 835 (quoting *Schuldies v. Millar*, 1996 S.D. 120, ¶ 8, 555 N.W.2d 90, 95). We review the grant of a new trial under the abuse of discretion standard, but "more deference is given to the trial court's grant of a new trial than its denial of one." *Reinfeld v. Hutcheson*, 2010 S.D. 42, ¶ 5, 783 N.W.2d 284, 287 (quoting *Morrison v. Mineral Palace Ltd. P'ship*, 1998 S.D. 33, ¶ 7, 576 N.W.2d 869, 870).

[¶16.] However, deference to a trial court's grant of a new trial is not without limits. A trial court may set aside a jury's verdict only "if the jury's conclusion was unreasonable and a clear illustration of its failure to impartially apply 'the reasoning faculty on the facts before them.'" *LDL Cattle Co. v. Guetter*, 1996 S.D. 22, ¶ 13, 544 N.W.2d 523, 527 (quoting *Lewis v. Storms*, 290 N.W.2d 494, 497 (S.D. 1980)). "All inferences are indulged in favor of the nonmoving party[.]" *Surgical Inst. of S.D., P.C. v. Sorrell*, 2012 S.D. 48, ¶ 9, 816 N.W.2d 133, 137 (quoting *Baddou v. Hall*, 2008 S.D. 90, ¶ 33, 756 N.W.2d 554, 562). "If the jury's verdict 'can be explained with reference to the evidence,' it should be affirmed." *Reinfeld*, 2010 S.D. 42, ¶ 8, 783 N.W.2d at 287 (quoting *Waldner*, 2008 S.D. 75, ¶ 14, 754 N.W.2d at 836).

[¶17.] In this case, Lisa admitted that the cause of her need for the pacemaker and subsequent medical problems was the subject of conflicting expert evidence. Thus, Lisa admitted that there was no evidence relating to this issue upon which the motion for new trial could be granted. She conceded that it "was within the jury's prerogative" to find that Sanford's negligence did not cause her need for the pacemaker and her subsequent medical problems. In her brief supporting her motion for a new trial, she summarized:

> Lisa did have a pacemaker placed on September 26, 2007, which the jury apparently found was unrelated to [Sanford's] negligence. Reaching such a conclusion was within the jury's prerogative, and thus, Lisa relies on no evidence connected to her heart condition and the pain associated therewith to seek a new trial before [the circuit court].

[¶18.] Our review of the record confirms this position. The jury's verdict rejecting Lisa's claim for damages relating to the pacemaker and subsequent

medical problems is fully explained with reference to the evidence. Indeed, even on appeal, Lisa admitted that "the expert testimony differed sharply on the issue[,]"and that it was an "obvious fact" that there was "disputed testimony" on this issue. Because there was competent evidence supporting the jury's verdict in favor of Sanford on this issue, the circuit court abused its discretion in granting a new trial on the question of causation and damages relating to Lisa's need for a pacemaker and her subsequent medical problems. *See Surgical Inst. of S.D., P.C.*, 2012 S.D. 48, ¶ 9, 816 N.W.2d at 137 ("[I]f competent evidence exists to support the verdict, it will be upheld." (citation omitted)).

[¶19.] Lisa, however, contends that the jury clearly erred in awarding no damages for the incisions that were made in the course of the aborted surgery. She further contends that the jury returned a "general verdict," and therefore, one cannot "parse out" what the jury found by its verdict. Assuming that the basis for the jury's decision cannot be determined, Lisa argues that she is entitled to a new trial on all issues, including the question whether her cardiac problems were caused by the aborted surgery. We disagree.

[¶20.] First, the jury did not return a general verdict. In jury instruction twenty, the jury was instructed: "the only issues for you to decide are whether the plaintiff suffered *any* injury *as a legal result* of the defendant's negligence, and if so, the amount of damages, *if any*, the plaintiff is entitled to recover." (Emphasis added.) Additionally, the verdict form required the jury to determine only those two elements of her tort claim: causation and damages. The jury resolved both questions against Lisa, finding that none of her claims for damages were caused by

Sanford's negligence. Therefore, by rejecting all of Lisa's asserted claims, the jury necessarily rejected what was essentially the only claim Lisa presented during five days of trial: that the negligent introduction of oxygen into her stomach caused her need for a pacemaker and her subsequent problems.

[¶21.] We also note that Lisa herself has "parsed out" the verdict in this manner. She moved for a new trial only on the issue of damages for incisional pain. She specifically agreed that "the jury apparently found [that her cardiac and subsequent problems were] unrelated to [Sanford's] negligence." We decline to view the verdict on appeal differently than Lisa viewed it when arguing for a new trial before the circuit court.

[¶22.] Having determined that the circuit court erroneously granted a new trial on Lisa's claim relating to her cardiac problems, we next consider whether the court erred in granting a new trial on Lisa's claim for incisional pain. SDCL 15-2-14.1 requires that medical-malpractice actions be brought within two years from the date of the alleged malpractice. Lisa commenced this suit in October 2010, more than three years after the surgery that caused the abdominal incisions. Lisa, however, contends that under the "continuing treatment" doctrine, the limitations period was tolled until she stopped receiving treatment at Sanford. *See Liffengren v. Bendt*, 2000 S.D. 91, ¶ 13, 612 N.W.2d 629, 632.

[¶23.] For the doctrine to apply, the continuing treatment must be "for the same or related illnesses or injuries." *Id.* ¶ 14 (citation omitted). The medical practitioner must continue "to treat the patient for the particular disease or condition created by the original act of [alleged] negligence." *Id.* ¶ 17 (alteration in

original) (quoting *Conner v. St. Luke's Hosp., Inc.*, 996 F.2d 651, 653-54 (4th Cir. 1993)). Therefore, the doctrine should be applied only when "the 'professional's involvement after the alleged malpractice is for the performance of the same or related services and is not merely continuity of a general professional relationship.'" *Bruske v. Hille*, 1997 S.D. 108, ¶ 15, 567 N.W.2d 872, 877-78 (quoting *Schoenrock v. Tappe*, 419 N.W.2d 197, 201 (S.D. 1988)).

[¶24.] The limitations period for Lisa's claim for damages associated with her abdominal incisions was not tolled by the continuing treatment doctrine. There is no dispute that Lisa received no continuing treatment for incisional pain after her discharge from Sanford on September 27, 2007, which was more than three years before she brought suit. Indeed, in her new-trial motion, Lisa did not claim that she was treated for incisional pain after September 27, 2007. Similarly, in response to Sanford's statement of undisputed facts, Lisa did not claim that there was a factual dispute regarding continued treatment for her incisional pain that would trigger the continuing treatment doctrine. Even on appeal, Lisa concedes that her incisional pain only required her "to take pain medication for several days[.]" And at oral argument, Lisa agreed that the continuing treatment related to the pacemaker. Because Lisa received no continuing treatment for the incisional pain created by the original negligence, the statute of limitations was not tolled.

[¶25.] Lisa, however, contends that we cannot know when her continuing treatment ended because the jury never reached that question on the verdict form. But Sanford did not appeal from the jury's decision. Sanford appeals from the circuit court's denial of Sanford's motion for summary judgment on its statute of

limitations defense. Therefore, the question is whether the record reflects that Lisa satisfied her summary judgment burden when a statute of limitations defense was presented.

> When faced with a summary judgment motion where the defendant asserts the statute of limitations as a bar to the action and presumptively establishes the defense by showing the case was brought beyond the statutory period, the burden shifts to the plaintiff to establish the existence of material facts in avoidance of the statute of limitations[.]

*One Star v. Sisters of St. Francis*, 2008 S.D. 55, ¶ 12, 752 N.W.2d 668, 675 (alteration in original) (quoting *Peterson v. Hohm*, 2000 S.D. 27, ¶¶ 7-8, 607 N.W.2d 8, 10-11) (internal quotation marks omitted). In this case, Sanford presumptively established its statute of limitations defense by showing that Lisa brought this case beyond the two-year limitations period in SDCL 15-2-14.1. Thus, the burden was on Lisa "to establish the existence of material facts to show the statute of limitations was somehow tolled." *Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 S.D. 16, ¶ 8, 575 N.W.2d 457, 459 (citation omitted).

[¶26.]     Lisa did not satisfy that burden. She has not identified a single fact suggesting that she received any continuing treatment for incisional pain after her 2007 discharge from Sanford. Consequently, Lisa's remaining claim for damages for incisional pain is barred by the two-year statute of limitations in SDCL 15-2-14.1.

[¶27.]     In sum, the circuit court abused its discretion in granting Lisa's motion for a new trial. On the issue of whether Lisa's cardiac and subsequent medical problems were caused by Sanford's negligence, the jury's verdict must be sustained because it is explained with reference to the evidence. Further, Lisa's remaining

claim for damages for incisional pain was barred by the statute of limitations. The circuit court erred as a matter of law in granting Lisa's motion for a new trial, and an error of law constitutes an abuse of discretion. *Credit Collection Servs., Inc.*, 2006 S.D. 81, ¶ 5, 721 N.W.2d at 476 (citation omitted).

[¶28.]     Accordingly, we reverse the circuit court's order granting a new trial.*

[¶29.]     GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON, and WILBUR, Justices, concur.

---

\*     Because we find that the circuit court abused its discretion in granting Lisa's motion for a new trial, we do not review Sanford's other statute of limitations question.