GILBERTSON, Chief Justice.
[¶ 1.] Magellan Pipeline Company, LP (Magellan) appeals a sales tax assessment by the Department of Revenue and Regulation (the Department) on additive injection and equipment calibration pipeline services. The Hearing Examiner, Department Secretary, and circuit court found that Magellan’s additive injection and equipment calibration pipeline services are non-exempt from tax under SDCL 10-45-12.1. We reverse.
FACTS
[¶ 2.] We rely on the parties’ stipulated facts. Magellan is a Delaware limited partnership headquartered in Tulsa, Oklahoma. Magellan’s principal business is the transportation of refined petroleum products. Magellan owns and operates a refined petroleum products pipeline system, which covers a 13-state area, including South Dakota. Magellan has refined petroleum terminals in both Watertown and Sioux Falls.
[¶ 3.] The refined petroleum products originate from direct connections to refineries and interconnections with other interstate pipelines. For the most part, Magellan’s customers own the refined petroleum products transported through Magellan’s pipeline. Magellan charges its customers a tariff rate for transporting refined petroleum products through its pipeline. When the refined petroleum products enter the terminal in Sioux Falls or Watertown, the products are either stored onsite or delivered to Magellan customers through a rack.[1] Magellan also charges its customers for services Magellan provides at its terminals. Those services include: ethanol and biodiesel unloading and loading, additive injections, custom blending, laboratory testing, data services, other system services, and product storage. Additives are injected into the refined petroleum at the rack, which is the time Magellan customers take delivery of their products from a Magellan terminal. Some additives are mandated by law (e.g., gasoline detergent, diesel lubricity additive, and diesel dye) whereas others are non-mandatory (e.g., jet deicer, diesel detergent, and diesel cold flow improver).
[¶ 4.] In September 2009, the Department notified Magellan that it would begin an audit in March 2010. The audit would cover the period of September 2006 through September 2009. Later, the Department and Magellan agreed to extend the audit period through January 2010. Department Auditor Angela Bormann conducted the audit at Magellan headquarters in Tulsa, Oklahoma. Following the audit, the Department issued a certificate of assessment (COA) against Magellan, alleging a balance due of $241,274.52. Of the *404 amount alleged to be owed, $190,268.50 was attributed to unpaid sales and use tax, and $51,006.02 was attributed to interest. The COA largely alleged unpaid sales tax for certain pipeline services, including charges related to additive injections.
[¶ 5.] Magellan notified the Department that it was contesting the total assessment but, under protest, paid the full tax assessment of $190,268.50. Initially Magellan requested a hearing. Later, however, the parties agreed to forgo a hearing and submitted stipulated facts for the Hearing Examiner’s review. The primary issue before the Hearing Examiner was whether the fees Magellan charged for additive injections and equipment calibration pipeline services were subject to South Dakota sales tax. The Hearing Examiner entered a proposed decision affirming the Department’s tax assessment of Magellan. The Secretary of the Department adopted the Hearing Examiner’s decision in full.
[¶ 6.] Magellan appealed to the circuit court. The circuit court found that Magellan’s additive injection and equipment calibration pipeline services were subject to South Dakota sales tax under SDCL 10-45-4, concluding that SDCL 10-45-12.1 exempts only pipeline transportation services. On appeal we consider whether Magellan’s additive injection and equipment calibration pipeline services are exempt from South Dakota’s sales tax under SDCL 10-45-12.1.
STANDARD OF REVIEW
[¶ 7.] “Whether a statute imposes a tax under a given factual situation is a question of law [reviewed de novo] and thus no deference is given to any conclusion reached by the Department of Revenue or the circuit court.” TRM ATM Corp. v. S.D. Dep’t of Revenue & Regulation, 2010 S.D. 90, ¶ 3, 793 N.W.2d 1, 3 (quoting S.D. Dep’t of Revenue v. Sanborn Tel. Coop., 455 N.W.2d 223, 225 (S.D.1990)); see also Mauch v. S.D. Dep’t of Revenue & Regulation, 2007 S.D. 90, ¶ 8, 738 N.W.2d 537, 540. Further, “[statutory interpretation and application are questions of law, and are reviewed by this Court under the de novo standard of review.” Powder v. S.D. Dep’t of Revenue & Regulation, 2010 S.D. 10, ¶ 8, 778 N.W.2d 602, 604.
ANALYSIS AND DECISION
[¶ 8.] Magellan argues that its additive injection and equipment calibration pipeline services are exempt from South Dakota’s sales tax under SDCL 10-45-12.1. The critical inquiry is what the South Dakota legislature intended by exempting the services of “pipe lines” in SDCL 10-M5-12.1. SDCL 10^45-12.1 provides that “[t]he following services enumerated in the Standard Industrial Classification Manual ... are exempt from the provisions of this chapter: ... pipe lines, except natural gas (major group 46)[.]” SDCL 10-45-12.1.
[¶ 9.] “When interpreting a statute, we ‘begin with the plain language and structure of the statute.’ ” In re Pooled Advocate Trust, 2012 S.D. 24, ¶ 32, 813 N.W.2d 130, 141 (quoting State ex rel. Dep’t of Transp. v. Clark, 2011 S.D. 20, ¶ 10, 798 N.W.2d 160, 164). “When the language in a statute is clear, certain, and unambiguous, there is no reason for construction, and this Court’s only function is to declare the meaning of the statute as clearly expressed.” Id. (quoting Clark, 2011 S.D. 20, ¶ 5, 798 N.W.2d at 162). Further, “ ‘[w]hile every word of a statute must be presumed to have been used for a purpose, it is also the case that every word excluded from a statute must be presumed to have been excluded for a purpose.’” Wheeler v. Farmers Mut. Ins. Co. of Neb., *405 2012 S.D. 83, ¶ 21, 824 N.W.2d 102, 109 (citation omitted).
[¶ 10.] “Statutes exempting property from taxation should be strictly construed in favor of the taxing power.” Graceland, Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc. v. S.D. Dep’t of Revenue, 2002 S.D. 145, ¶ 5, 654 N.W.2d 779, 782 (quoting Matter of Sales & Use Tax Refund Request of Media One, Inc., 1997 S.D. 17, ¶ 9, 559 N.W.2d 875, 877). “The words in such statutes should be given a reasonable, natural, and practical meaning to effectuate the purpose of the exemption.” Id. (citation omitted). Further, the taxpayer “carries the burden of proving that [it] fall[s] within the exemption.” Id. ¶ 12.
[¶ 11.] The Department asks this Court to find that SDCL 10-45-12.1 differentiates between Magellan’s pipeline transportation services and its additive injection and equipment calibration pipeline services. If we were to interpret SDCL 10-45-12.1 to exempt pipeline transportation services and not additive injection and equipment calibration pipeline services, it would require us to read the word transportation into the statute. A plain reading of the statutory text, however, makes clear that SDCL 10-45-12.1 does not include the word “transportation” when referencing the “pipe lines” exemption.
[¶ 12.] Also helpful in assessing the Legislature’s intent in SDCL 10-45-12.1 is the Legislature’s treatment of pipe lines transporting natural gas. SDCL 10-45-12.1 provides an exemption for the services of “pipe lines, except natural gas[.]” SDCL 10^45-67 governs pipe lines transporting natural gas. It provides: “[t]he provision of natural gas transportation services by a pipeline is exempted from the provisions of this chapter and from the computation of the tax imposed by this chapter.” (Emphasis added.) If the Legislature had intended that SDCL 10-45-12.1 also be limited to petroleum pipeline transportation services, it would have limited the petroleum pipeline services exemption as it did for natural gas pipelines in SDCL 10-45-67. Accordingly, we hold that the trial court erred in concluding that the additive injection and equipment calibration pipeline services provided by Magellan were not the type of services the legislature intended to be exempt from tax under SDCL 10-45-12.1.
[¶ 13.] We also note that an entity seeking an exemption for “pipe lines” services under SDCL 10-45-12.1 must be eligible for the exemption. That inquiry requires reference to the Standard Industrial Classification (SIC) Manual, which is directly referenced within SDCL 10-45-12.1. Graceland, 2002 S.D. 145, ¶ 7, 654 N.W.2d at 783 (stating that “SDCL 10-45-12.1 adopts the classification scheme set forth in the Standard Industrial Classification Manual (SIC) making it necessary to examine the SIC Manual in order to determine the proper classification”); Sioux Falls Shopping News v. Dep’t of Revenue & Regulation, 2008 S.D. 34, ¶ 20, 749 N.W.2d 522, 526 (stating that “[t]he greater part of [SDCL 10-45-12.1] employs the SIC Manual to define specified exempt services”).
[¶ 14.] The Department classifies Magellan under industry number 4613 (refined petroleum pipelines), which falls within Major Group 46 in the SIC Manual. The portion of the SIC Manual that addresses Major Group 46 is titled “pipelines, except natural gas.” This portion of the SIC Manual defines a refined petroleum pipeline as an: “[e]stablishment[ ] primarily engaged in the pipeline transportation of refined products of petroleum, such as gasoline and fuel oil.” Office of Mgmt. & Budget, Standard Industrial *406 Classification Manual 279 (1987). Because Magellan is an establishment primarily engaged in the pipeline transportation of refined petroleum products, it is eligible to receive the benefit of tax exemptions under SDCL 10-45-12.1. We hold that SDCL 10-45-12.1 exempts additive injection and equipment calibration pipeline services, and that Magellan is eligible for such exemptions because of its Major Group 46 status.
[¶ 15.] The Department argues that Magellan’s position that the additive injection and equipment calibration pipeline services are exempt from tax under SDCL 10-45-12.1 is contrary to our prior holdings in which we have stated that: “when examining whether a tax applies, the focus belongs on the transaction, not the character of the participants.” Sioux Falls Shopping News, 2008 S.D. 34, ¶ 23, 749 N.W.2d at 527 (citation omitted). The Department’s argument is misplaced. The types of transactions at issue in this appeal, additive injection and equipment calibration services, squarely fall within the exemption for “pipe lines” services as set forth in SDCL 10-45-12.1.
[¶ 16.] The parties disagree as to how our past ease law should be utilized in deciding this dispute. For example, both parties rely on Mauch v. S.D. Dep’t of Revenue & Regulation, 2007 S.D. 90, 738 N.W.2d 537, to support their differing arguments. In Mauch, this Court reversed the Department’s assessment of tax against the services of an engineer. Id. ¶ 24. The Court found that the engineer’s educational background and years of experience qualified him to provide “engineering services” as required under the exemption, even though he did not hold a professional license. Id. ¶ 22. In reversing the portion of the tax assessment related to engineering services, this Court found, in part, that the Department erred in incorporating other, unrelated statutes, which defined professional engineer. Id. ¶¶ 12-20. Like our ruling in Mauch, we will not apply text that is absent from a particular statute. Accordingly, we decline the Department’s request to read-in the term transportation to SDCL 10-45-12.1.
[¶ 17.] The parties also disagree as to the proper application of Watertown Coop. and the Court’s use of the “predominant activity test” in that case. See Watertown Coop. Elevator Ass’n v. S.D. Dep’t of Revenue, 2001 S.D. 56, 627 N.W.2d 167. Wa-tertown Coop, involved a use tax assessment against Watertown Coop, for fees it paid for the services of crop production specialists (production specialists). Id. ¶ 5. The production specialists were employed directly by product distributors, however, Watertown Coop.’s practice was to “reimburse the distributors for all actual expenses of the production specialists, including salary, social security, income tax withholding, workers’ compensation, equipment leases, travel, and other incidental expenses.” Id. ¶ 2. The ranchers and farmers purchasing agronomy products from Watertown Coop, did not pay a direct fee for product specialist services, but Wa-tertown Coop, built the cost of those services into the purchase price of the agronomy products. Id. ¶ 3. Tax related to the sale of the agronomy products themselves was not at issue because the sale of agronomy products was tax exempt. Id. ¶ 11.
[¶ 18.] Watertown Coop, argued that the services were “an ‘inextricable part’ of the sale of exempt agronomy products.” Id. The Court disagreed, concluding that use tax should be applied because the services involved the performance of services, rather than the sale of agronomy products. Id. ¶ 14. The Court clarified its use of the predominant activity test by noting that: “[h]ere, the dispositive transaction oc *407 curred with the distributors and [Water-town Coop.], not with the ultimate sale of agronomy products or in providing production specialist services to farmers and ranchers.” Id. ¶ 12.
[¶ 19.] In Watertown Coop., the Court used the predominant activity to clarify that the services being provided were between the taxpayer, Watertown Coop., and the distributors, rather than Watertown Coop, and the farmers and ranchers (who were the actual recipients of the agronomy products, which qualified for the exemption). Id. ¶¶ 12-14. The case before us is distinguishable from Watertomi Coop, because that case involved the imposition of tax when the taxpayer attempted to attach services that were separate and distinct from the actual tax exemption. Here, it is not necessary to apply the predominant activity test because of our finding that additive injection and equipment calibration pipeline services squarely fall within the pipeline services tax exemption provided in SDCL 10-45-12.1. Watertown Coop. required this Court to utilize the predominant activity test to distinguish the relationships among three separate parties: the taxpayer, its customer, and its distributor. Our case is distinctly different in that the services at hand involve only two parties: Magellan and its customers.[2]
CONCLUSION
[¶ 20.] Under the plain language of SDCL 10 — 45-12.1, Magellan’s additive injection and equipment calibration pipeline services are exempt from sales tax. We reverse.
[¶ 21.] SEVERSON, Justice, concurs.
[¶ 22.] ZINTER, Justice, and KERN, Circuit Court Judge, concur specially.
[¶ 23.] KONENKAMP, Justice, dissents.
[¶ 24.] KERN, Circuit Court Judge, sitting for WILBUR, Justice, disqualified.

. A rack is a mechanism capable of delivering petroleum products into a means of transport other than the pipeline, such as a tanker truck trailer or a railcar.

. Because we find that Magellan's additive injection and equipment calibration pipeline services are tax exempt under SDCL 10-45-12.1, we need not reach the issue of interest assessed against Magellan on the COA.