#27145-a-DG

**2015 S.D. 4**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LAURA PETERS,          Plaintiff and Appellant,

    v.

GREAT WESTERN BANK, INC.,        Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE ROBERT GUSINSKY
Judge

\* \* \* \*

TODD A. SCHWEIGER
Rapid City, South Dakota        Attorney for plaintiff
                                            and appellant.

MICHAEL V. WHEELER
DeMersseman Jensen Tellinghuisen
  Stanton & Huffman, LLP
Rapid City, South Dakota        Attorneys for defendant and
                                            appellee.

\* \* \* \*

CONSIDERED ON BRIEFS ON
JANUARY 12, 2015
OPINION FILED **01/28/15**

GILBERTSON, Chief Justice

[¶1.]     Laura Peters appeals the circuit court's denial of her motion to compel discovery on Great Western Bank (the Bank), as well as the court's granting of summary judgment in favor of the Bank.  She asserts that the Bank was required to join her as a defendant in two foreclosure actions and that additional time for discovery was necessary for her to answer the Bank's motion for summary judgment.  We affirm.

**Facts and Procedural History**

[¶2.]     In March 2003, Peters obtained a default judgment against Barker & Little, Inc. (BLI)—a South Dakota corporation.[1]  BLI was a general partner in Barker & Little Limited Partnership III (BLLP).  Doug Hamilton owned or operated BLI and BLLP, as well as a number of other entities including Barker & Little Manufactured Homes, Inc. (BLMHI).  BLI was the operating entity for the management of rental properties, including property titled to BLLP.  The Bank extended a line of credit to BLI secured, in part, by mobile homes and rent-to-own contracts owned by BLMHI.

[¶3.]     In 2008, the Bank initiated foreclosure proceedings against BLLP and BLMHI.  In its action against BLLP, the Bank sought to foreclose on a real estate mortgage; against BLMHI, the Bank sought to recover the mobile homes and rent-to-own contracts used as collateral on the line of credit extended to BLI.  Because of BLI's relationship with both entities, the Bank named BLI as a codefendant in each

---

1.     We affirmed the circuit court's refusal to set aside this judgment in *Peters v. Barker & Little, Inc.*, 2009 S.D. 82, 772 N.W.2d 657.

action. The Bank and Hamilton privately negotiated a settlement agreement.

Pursuant to that agreement, the various Hamilton-owned entities transferred real

and personal property to the Bank. The Bank did not join Peters as a defendant or

otherwise notify her of these foreclosure actions.

[¶4.] Upon learning of the Bank's foreclosure actions involving BLI, Peters

initiated this action against the Bank, alleging fraud, conversion, deceit, and unjust

enrichment. Peters made a motion to compel discovery, and the Bank responded

with a motion for summary judgment. The circuit court granted the Bank's motion

and denied Peters's motion as moot. Peters appeals, raising two issues:

1. Whether the Bank was required to join Peters as a defendant in its foreclosure actions against BLI, BLLP, and BLMHI.

2. Whether the circuit court should have granted Peters additional time for discovery prior to ruling on the Bank's motion for summary judgment.

### Standard of Review

[¶5.] Our standard of review on summary judgment is as follows:

> In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.

*Saathoff v. Kuhlman*, 2009 S.D. 17, ¶ 11, 763 N.W.2d 800, 804 (quoting *Pellegrino v.*

*Loen*, 2007 S.D. 129, ¶ 13, 743 N.W.2d 140, 143). We review "[a] circuit court's

refusal to grant additional discovery prior to awarding summary judgment . . . for abuse of discretion." *Stern Oil Co. v. Border States Paving, Inc.*, 2014 S.D. 28, ¶ 24, 848 N.W.2d 273, 281.

## Analysis and Decision

[¶6.] Peters alleges the Bank committed conversion and was unjustly enriched by obtaining property to which she had a superior claim. She also alleges that the Bank committed fraud and deceit by failing to name her as a defendant. However, the only persons that a foreclosure plaintiff must join as a defendant, under South Dakota law, are those who have "an interest in, or lien on, the mortgaged property as of the date of filing the action[.]" SDCL 21-49-15. Thus, all of Peters's causes of action are premised on the assertion that Peters had a claim to the foreclosure property; consequently, all of Peters's causes of action turn on the same question: Whether Peters had an interest in, or lien on, property included in the Bank's foreclosure actions against BLI, BLLP, and BLMHI as of the date the Bank filed those actions.

[¶7.] Peters argues that her status as a judgment creditor of BLI gave her an "interest"—within the meaning of SDCL 21-49-15—in the foreclosure property because that property could have been sold to satisfy her judgment. As noted above, South Dakota law requires "[a]ll persons having an interest in, or lien on, the mortgaged property as of the date of filing the action . . . be named as defendants in the action." SDCL 21-49-15. We have not previously construed the meaning of "interest" as it appears in SDCL 21-49-15. Therefore we apply our usual approach to statutory construction.

> The purpose of statutory construction is to discover the true intention of the law, which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the Legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect.

*City of Rapid City v. Estes*, 2011 S.D. 75, ¶ 12, 805 N.W.2d 714, 718 (quoting *State ex rel. Dep't of Transp. v. Clark*, 2011 S.D. 20, ¶ 5, 798 N.W.2d 160, 162). Further, the Legislature has commanded that "[w]ords used [in the South Dakota Codified Laws] are to be understood in their ordinary sense[.]" SDCL 2-14-1.

[¶8.] The meaning of the word "interest," as used in SDCL 21-49-15, is more restrictive than Peters suggests. Dictionaries seem to offer two types of definitions for the word "interest." The first definition broadly describes "[t]he object of any human desire"; the second, "all or part of a legal or equitable claim to or right in property[.]" *Black's Law Dictionary* 934 (10th ed. 2014). There is no doubt that Peters *desired* access to the foreclosure property in order to satisfy her judgment. However, it is difficult to imagine that an actual lienholder would have had any less of a desire to obtain that property. Thus, a definition of "interest" broad enough to include a general judgment creditor would also include lienholders. However, the inclusion of the phrase "or lien on" in SDCL 21-49-15 clearly indicates that two sets of persons must be joined as defendants: (1) those with an interest in the mortgaged property; and (2) those with a lien on the mortgaged property. If the second set is defined as a subset of the first—i.e., if the word "interests" is defined in such a way that includes lienholders—then the phrase "or lien on" is redundant. Because "[w]e assume that the Legislature intended that no part of its statutory scheme be

rendered mere surplusage[,]" *Faircloth v. Raven Indus., Inc.*, 2000 S.D. 158, ¶ 6, 620 N.W.2d 198, 201, we reject Peters's broad interpretation of the word "interest." We think it clear that the Legislature intended SDCL 21-49-15 to require the joining of persons who have a legal claim to, or lien on, the property subject to foreclosure itself, rather than merely a money judgment that might be satisfied by the sale of that property.

[¶9.]     Peters does not have an interest in the foreclosure property. Peters has not asserted any legal claim to, or right in, the property itself—e.g., she does not purport to hold any present or future estate in, or option to purchase, the foreclosure property. Instead, Peters simply obtained a default money judgment against BLI entitling her to the payment of $24,230.90. Such a judgment does not, in itself, give Peters a right to BLI's property. We decided a similar issue well over a century ago in *Yetzer v. Young*, 3 S.D. 263, 52 N.W. 1054 (1892). In that case, a judgment creditor sought to intervene in a foreclosure action brought by a third party against her judgment debtor. At the time, section 4886 of the Dakota Compiled Laws permitted a person to intervene in a lawsuit if that person had "an interest in the matter in litigation[.]" *Id.* at 267, 52 N.W. at 1055.[2] The plaintiff asserted "that as a simple judgment creditor she had such 'an interest in the matter in litigation' as entitled her to intervene[.]" *Id.* She argued that "the object of [the third party's] action was to get possession of the goods, to appropriate them to the payment of their alleged mortgage, and thus reduce and divert the fund out of which she might otherwise collect her judgment, and that she was directly

---

2.     The current intervention statutes are found at SDCL 15-6-24(a) to -24(c).

interested in preventing this." *Id.* We rejected the plaintiff's argument, noting that "[t]he subject-matter of the litigation was [the third party's] right to take the goods under their mortgage. It went only to the possession. In this question [plaintiff] could not be concerned, unless she had some interest in the goods that might be affected by such change of possession." *Id.* Here, like in *Yetzer*, Peters's interest in the foreclosure property is not a direct claim of right to the property itself; rather, the property merely constitutes a "fund out of which she might otherwise collect her judgment[.]" *Id.* Similarly, we hold that Peters did not have an interest in the foreclosure property at issue here within the meaning of SDCL 21-49-15.

[¶10.] *Yetzer* notwithstanding, Peters argues that our decision in *First Nat'l Bank of Eden v. Meyer*, 476 N.W.2d 267 (S.D. 1991), supports the proposition that she had a constitutionally and statutorily protected right to notice in these foreclosure actions. In *Meyer*, a bank "sought to quiet title to real property it acquired as a result of a tax deed proceeding." 476 N.W.2d at 268. At the time, applicable South Dakota law did not entitle lienholders to notice of intent to take a tax deed. *Id.* at 270. Based on this, the bank moved for summary judgment. The circuit court denied the motion and "held that South Dakota's statutory scheme for taking tax deeds was constitutionally deficient because it failed to provide notice to judgment lienholders." *Id.* at 269. We affirmed the circuit court and explicitly held "that known or readily ascertainable judgment *lienholders* are entitled to the same notice as a mortgagee." *Id.* at 270 (emphasis added). This holding was based on the United States Supreme Court's decision in *Mullane v. Cent. Hanover Bank & Trust Co.*, which states: "An elementary and fundamental requirement of due process in

any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise *interested* parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950) (emphasis added). As we discussed above, while Peters has a property interest in her money judgment against BLI, she did not have an interest in the foreclosure property itself. Thus, although the settlement agreement may have reduced the fund out of which Peters's judgment might have been paid, it did nothing to deprive Peters of her actual property interest.

[¶11.] Because Peters did not have an interest in the foreclosure property, SDCL 21-49-15 would have required the Bank to join her as a defendant only if she had a lien on that property. As we said in *Yetzer*:

> A general creditor, either contract or judgment, may not [attack a conveyance as fraudulent]. He must first become interested in the particular property he desires to reach, by attaching his claim to it. In case of real estate, this may be done in this state by docketing a judgment in the proper county, or, in case of personal property, by levying an execution or attachment.

3 S.D. at 268, 52 N.W. at 1055. The procedure for acquiring a judgment lien on real property is essentially the same today as it was in 1892.

> When a judgment has been docketed with a clerk of the circuit court, it shall be a lien on all the real property, except the homestead, in the county where the same is so docketed, of every person against whom any such judgment shall be rendered, . . . and no judgment shall become a lien on real property as herein provided unless it be docketed in the county where the land is situated.

SDCL 15-16-7. Because SDCL 15-16-5 requires the docketing of a money judgment with the clerk of the circuit court issuing the judgment, such a lien is automatically

created for any of the judgment debtor's real property located in the county in which the judgment was obtained. As we indicated in *Yetzer*, however, such is not the case in regard to personal property. 3 S.D. at 268, 52 N.W. at 1055. This remains true today.

> When the officer has made a levy upon any personal property pursuant to the provisions of this code, he shall have a lien thereon for all purposes essential to carrying out the execution, but no execution shall constitute any lien upon personal property until an actual levy upon such property has been made thereunder.

SDCL 15-18-30. Therefore we must determine whether there is any genuine issue of material fact as to whether any of the foreclosure property was: (1) real property owned by BLI and located in Pennington County—the county in which Peters obtained her default judgment[3]—or (2) personal property of BLI that Peters levied.

[¶12.] There does not appear to be any genuine dispute as to whether or not BLI held title to any real property. In its motion for summary judgment and accompanying submissions, the Bank plainly stated that BLI did not own any real estate involved in the foreclosure actions. Peters seems to agree with this statement, stating in her reply that she did "not dispute that [the] real estate [involved in the foreclosure actions] was titled to Barker & Little Limited Partnership III." Additionally, the following colloquy occurred at the summary judgment hearing:

---

3. Peters does not assert that she docketed her money judgment against BLI in any other county. Therefore she could not have had a lien against real property outside of Pennington County, and any information regarding BLI-owned real estate outside of Pennington County is irrelevant to this case.

**[The Court]:**  Now, it appears that there's no dispute that the property that was foreclosed on by the bank was owned only by Barker & Little Limited Partnership III, but you are disputing that, though.  I mean, it seems to me that in your response to the statement of undisputed material facts you are agreeing that the only property involved was titled to the limited partnership, not Barker & Little, Inc., the parent company, so to speak.

Help me out here.

**[Peters's Attorney]:**  Your Honor, I agree that after the door opened on these private negotiations that resolved these two foreclosure actions there were two properties that were transferred.  One was the property of Barker & Little Limited Partnership III that was subject to foreclosure.  Another property was transferred that was not subject to foreclosure.

. . . .

**[The Court]:**  Was the property that was not subject to foreclosure owned by Barker & Little, Inc.?

**[Peters's Attorney]:**  No . . . .

[¶13.]     Despite these admissions, Peters maintains, in her briefs to this Court, "that what property was transferred in the foreclosures remain[s] unknown, and that Peters therefore dispute[s] Bank's claim that no [BLI] real property had been transferred."  We have said that "proof of a mere possibility is never sufficient to establish a fact." *Estate of Elliott ex rel. Elliott v. A&B Welding Supply Co.*, 1999 S.D. 57, ¶ 16, 594 N.W.2d 707, 710.  Instead, "[w]hen challenging a summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Id.* (quoting *Himrich v. Carpenter*, 1997 S.D. 116, ¶ 18, 569 N.W.2d 568, 573) (internal quotation marks omitted).  Peters's speculation that there *might* have been BLI-owned real estate transferred to the Bank, coupled with her admission that the only real estate known—or hinted—to

have been transferred was not titled to BLI, is not a presentation of specific facts. Peters's dispute, therefore, is not genuine.

[¶14.]    Although Peters does not genuinely dispute that BLI did not hold title to the property transferred to the Bank in the settlement agreement, she claims that BLI still "owned" the property because BLI was the only general partner in BLLP.  According to Peters, BLI "had a 100% partnership interest in the shell entity, [BLLP], to which involved real estate was titled.  Moreover, [BLI] and [BLLP] were both shell entities and mere alter-egos of Douglas Hamilton, so that those corporate and partnership veils can be pierced, if necessary, in the instant action."  We do not address Peters's assertion that she could pierce "those corporate and partnership veils."  However, even if Peters established that BLLP should be held liable for the actions of its general partner, such would only extend liability for Peters's money judgment against BLI to BLLP; the title status of partnership property would not be directly affected.  SDCL 48-7A-203 ("Property acquired by a partnership is property of the partnership and not of the partners individually."); SDCL 48-7A-501 ("A partner is not a co-owner of partnership property and has no interest in partnership property which can be transferred, either voluntarily or involuntarily.").  More importantly, SDCL 21-49-15 applies only to "persons having an interest in, or lien on, the mortgaged property *as of the date of filing the action . . . .*" (Emphasis added.)  Even if Peters had a theory for imputing liability to BLLR that would succeed at trial, she has offered no authority to support the retroactive imposition of a lien in contravention of the clear timing requirements of SDCL 21-49-15.  Therefore there is no genuine issue of material fact that Peters did

not have a lien on real property transferred to the Bank in the settlement agreement on the date the Bank filed the foreclosure actions.

[¶15.]     Finally, we must determine whether there is a genuine issue of material fact as to whether Peters had an established lien on any personal property involved in the settlement agreement. Peters's attorney argued at the summary judgment hearing that "Ms. Peters could have, if she had notice of this action, obtained a charging order so that any property that was left over after the satisfaction of the bank . . . could have been claimed . . . due to her judgment." As noted above, a general partner does not "own" partnership property. The only property that could have been the subject of a charging order would have been BLI's transferrable interest in BLLP, SDCL 48-7A-504—i.e., BLI's share of the profits and losses of the partnership and BLI's right to receive distributions, SDCL 48-7A-502. Once again, however, Peters does not claim to have ever previously undertaken the steps required to obtain a charging order or lien against any personal property. Therefore BLLP's liability for Peters's money judgment against BLI, even if established in the future, is immaterial to the question of whether or not Peters had a lien on personal property transferred to the Bank in the settlement agreement on the date the Bank filed the foreclosure actions.

[¶16.]     Nevertheless, Peters asserts that a full accounting of all personal property involved in the settlement agreement is necessary in order to determine whether or not any of BLI's personal property was transferred to another party. Peters argues that "since Bank's entire case, and the trial court's grant of summary judgment, rest upon unproven assertions about what property was *not* involved in

-11-

the foreclosures, discovery of the totality of what property *was involved* should have been permitted, prior to any summary judgment." Peters misperceives the basis of the circuit court's ruling. As we noted above, a judgment lien arises on personal property after "an actual levy upon such property has been made[.]" SDCL 15-18-30. Whether or not personal property was involved in the settlement agreement is immaterial unless Peters can show that she had an established lien on *any* personal property. In her statement regarding undisputed material facts, Peters plainly states, "Certainly no property of any kinds [sic] was successfully levied on. The return of execution does not 'specifically note' that no personal property was levied on, there is merely a blank space in which the Sheriff did not positively indicate levy on personal property." The Bank does not have the burden of proving Peters failed to levy; rather, Peters has the burden of proving that she levied on personal property. Because Peters did not provide any evidence that she had levied *any* personal property—and, in fact, admitted the contrary—a full accounting of the personal property involved in the settlement agreement is necessarily immaterial to her action. Therefore there is no genuine issue of material fact on this issue.

[¶17.]     Finally, Peters asserts the circuit court erred in denying her motion to compel discovery prior to granting the Bank's motion for summary judgment. "SDCL 15-6-56(f) . . . provides that a party opposing a motion for summary judgment is entitled to conduct discovery when necessary to oppose the motion. Under that rule, the facts sought through discovery must be 'essential' to opposing summary judgment . . . ." *Dakota Indus., Inc. v. Cabela's.Com, Inc.*, 2009 S.D. 39, ¶ 6, 766 N.W.2d 510, 512. Such facts are only essential if

> the Rule 56(f) affidavit . . . include[s] identification of "the probable facts not available and what steps have been taken to obtain" those facts, "how additional time will enable the nonmovant to rebut the movant's allegations of no genuine issue of material fact," and "why facts precluding summary judgment cannot be presented" at the time of the affidavit.

*Stern Oil Co.*, 2014 S.D. 28, ¶ 26, 848 N.W.2d at 281-82 (quoting *Anderson v. Keller*, 2007 S.D. 89, ¶ 32, 739 N.W.2d 35, 43 (Zinter, J., concurring)). Even if Peters genuinely disputed whether BLI owned real property in Pennington County, such information would have been publicly available. Her "[m]ere speculation that there is some relevant evidence not yet discovered [does not] suffice" to extend the time for discovery. *Id.* ¶ 28, 848 N.W.2d at 282 (quoting 11 James W. Moore et al., *Moore's Federal Practice* § 56.102[2] (3d ed. 2013)). Further, Peters did not allege that she docketed her judgment in any other county. Finally, Peters did not allege that she took the necessary steps to create a lien or interest in the personal property of any of the Hamilton entities. Because Peters "did not articulate *probable* facts relevant to [the existence of a lien on BLI's real or personal property] that could have been developed with additional discovery[,]" *id.*, the circuit court did not abuse its discretion in denying Peters's motion as moot.

## Conclusion

[¶18.] Peters does not have an interest in the foreclosure property at issue. Because there is no evidence that BLI owned real property located in Pennington County, that Peters docketed her judgment in any other county, or that Peters ever levied any personal property, Peters did not present any evidence to the circuit court that would prove the existence of a judgment lien against any property. Consequently, Peters did not have an interest in, or lien on, the foreclosure property

on the date the Bank filed its foreclosure actions.  Therefore there are no genuine issues of material fact, the Bank was entitled to judgment as a matter of law, and the circuit court did not abuse its discretion in denying Peters additional time for discovery.  We affirm.

[¶19.]      ZINTER, SEVERSON, WILBUR, Justices and KONENKAMP, Retired Justice, concur.

[¶20.]      KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.