#27568-a-DG
**2016 S.D. 33**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BARRY THOMAS PITT-HART, MD,                    Plaintiff and Appellant,

    v.

SANFORD USD MEDICAL CENTER,                    Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

* * * *

N. DEAN NASSER, JR.
JAMES M. NASSER of
Nasser Law Offices, PC
Sioux Falls, South Dakota                    Attorneys for plaintiff and
    appellant.


MELISSA C. HINTON of
Evans, Haigh & Hinton, LLP
Sioux Falls, South Dakota                    Attorneys for defendant and
    appellee.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 21, 2016
OPINION FILED **04/13/16**

#27568

GILBERTSON, Chief Justice

[¶1.]     Barry Thomas Pitt-Hart appeals the circuit court's order granting summary judgment to defendant Sanford USD Medical Center. Pitt-Hart argues that he commenced his action within the three-year statute of limitations applicable to general-negligence actions and that the court erred by determining his action was time barred. He also argues that even if a shorter statute of limitations applies, it should have been tolled. We affirm.

**Facts and Procedural History**

[¶2.]     On November 10, 2009, Pitt-Hart underwent a knee-replacement surgery at Sanford. The day after surgery, while Pitt-Hart was still hospitalized at Sanford, he asked for assistance to get out of bed and travel to and from the restroom adjoining his hospital room. Mark Nygard, a patient-care technician employed by Sanford, assisted Pitt-Hart. While Nygard attempted to help Pitt-Hart return to his bed, Pitt-Hart fell. Pitt-Hart was discharged on November 13, 2009.

[¶3.]     After being discharged, Pitt-Hart began inpatient rehabilitation at Avera Prince of Peace in Sioux Falls. Following that, Pitt-Hart underwent outpatient physical therapy at Prairie Rehabilitation until February 1, 2010. Neither Avera Prince of Peace nor Prairie Rehabilitation is affiliated with Sanford. In June 2010, Sanford agreed to provide outpatient physical therapy to Pitt-Hart at no charge because Medicare would not cover additional treatments at Prairie Rehabilitation. Pitt-Hart's outpatient therapy with Sanford concluded on September 14, 2010.

[¶4.]     Two years later, in September 2012, Pitt-Hart sought additional physical therapy for what he asserts were the continuing effects of the injury resulting from his fall.  Sanford declined to pay for additional treatment, and Pitt-Hart commenced this action on September 14, 2012, by delivering a summons and complaint to the Minnehaha County Sheriff for service on Sanford.  Sanford answered the complaint on October 5, 2012.  Sanford later filed a motion for summary judgment, asserting that Pitt-Hart's action was time barred under SDCL 15-2-14.1[1] as a medical-malpractice claim.  The circuit court agreed and granted Sanford's motion for summary judgment.

[¶5.]     Pitt-Hart appeals, raising the following issue: Whether Pitt-Hart's action was time barred by SDCL 15-2-14.1.

### Standard of Review

[¶6.]     "In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law." *Gades v. Meyer Modernizing Co.*, 2015 S.D. 42, ¶ 7, 865 N.W.2d 155, 157-58 (quoting *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 5, 859 N.W.2d 618, 621).  "We view the evidence 'most favorably to the nonmoving

---

1.     SDCL 15-2-14.1 states, in part:

> An action against a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts for malpractice, error, mistake, or failure to cure, whether based upon contract or tort, can be commenced only within two years after the alleged malpractice, error, mistake, or failure to cure shall have occurred . . . .

party and resolve reasonable doubts against the moving party.'" *Id.* ¶ 7,

865 N.W.2d at 158 (quoting *Peters*, 2015 S.D. 4, ¶ 5, 859 N.W.2d at 621).

[¶7.]    "Statutory interpretation is a question of law reviewed de novo."

*Wheeler v. Cinna Bakers LLC*, 2015 S.D. 25, ¶ 4, 864 N.W.2d 17, 19.

**Analysis and Decision**

[¶8.]    Pitt-Hart argues that summary judgment was inappropriate for a

number of reasons.  First, he contends that the circuit court erred by treating his

case as a direct-liability case instead of a vicarious-liability case.  According to Pitt-

Hart, the circuit court should have treated his action as if it were brought against

Nygard for purposes of determining whether the action was time barred by

SDCL 15-2-14.1.  Pitt-Hart also contends that even if SDCL 15-2-14.1 applies, the

running of its two-year period was tolled because of Sanford's alleged, inequitable

conduct.  Finally, Pitt-Hart contends that the two-year period was tolled under the

continuous-treatment rule because he continued to receive treatment until

September 14, 2010.

[¶9.]    Pitt-Hart first argues that SDCL 15-2-14.1 does not apply to this

action.  Pitt-Hart contends that "[s]uing only the master does not turn a *respondent

superior* claim into a direct liability claim for statute of limitations purposes."

Because Pitt-Hart concludes that SDCL 15-2-14.1 does not apply to Nygard, Pitt-

Hart also concludes that it does not apply to Sanford in this case.  According to Pitt-

Hart, "[a]lthough a hospital is vicariously liable for the torts of its ministerial

employees committed within the scope of employment, the ministerial tortious acts

of the employees do not become the torts of the hospital."  Therefore, Pitt-Hart

concludes that SDCL 15-2-14.1 bars claims only for malpractice directly performed by those persons listed in that statute. In essence, Pitt-Hart asks us to replace the word *against* in SDCL 15-2-14.1 and to read that statute to address only "an action [based on an injury caused by (rather than *against*)] a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts."

[¶10.]     Pitt-Hart's argument that SDCL 15-2-14.1 applies to "direct" claims but not vicarious claims is untenable, and we decline his invitation to insert language into SDCL 15-2-14.1. "When interpreting a statute, we 'begin with the plain language and structure of the statute.'" *Magellan Pipeline Co., LP v. S.D. Dep't of Revenue & Reg.*, 2013 S.D. 68, ¶ 9, 837 N.W.2d 402, 404 (quoting *In re Pooled Advocate Tr.*, 2012 S.D. 24, ¶ 32, 813 N.W.2d 130, 141). "Words used [in the South Dakota Codified Laws] are to be understood in their ordinary sense . . . ." SDCL 2-14-1. SDCL 15-2-14.1 applies simply to *an action*. An action is "[a] civil or criminal judicial proceeding." *Black's Law Dictionary* 35 (10th ed. 2014). The only qualifiers on the type of action contemplated by SDCL 15-2-14.1 are the type of defendant sued (i.e., "a physician, surgeon, dentist, hospital, sanitarium, registered nurse, licensed practical nurse, chiropractor, or other practitioner of the healing arts") and the type of conduct alleged (i.e., "malpractice, error, mistake, or failure to cure"). SDCL 15-2-14.1. Thus, according to its plain language, SDCL 15-2-14.1 broadly applies to any action meeting *these* criteria.[2] While direct and vicarious

---

2.     Pitt-Hart contends that "[i]f the Legislature intended SDCL 15-2-14.1 to include vicarious liability, it could have easily said so[.]" SDCL 15-2-14.1 is

(continued . . .)

theories of liability are distinct legal concepts, SDCL 15-2-14.1 makes no distinction between the two, nor does it appear that this Court has ever recognized such a distinction.

[¶11.] The question then becomes simply whether SDCL 15-2-14.1 applies to Pitt-Hart's action against Sanford. First, we must determine whether the type of defendant in this case is among those enumerated in SDCL 15-2-14.1. Although Pitt-Hart contends that the statute is inapplicable because Nygard is not a practitioner of the healing arts, our past cases establish that in vicarious-liability cases, the employee's negligence is treated as the employer's negligence. *See Lewis v. Sanford Med. Ctr.*, 2013 S.D. 80, ¶ 1, 840 N.W.2d 662, 663; *Burgard v. Benedictine Living Cmtys.*, 2004 S.D. 58, ¶¶ 1-3, 680 N.W.2d 296, 297-98. More importantly, Sanford—not Nygard—is the named defendant in this case. There is no dispute that Sanford is a hospital. Therefore, under the plain language of SDCL 15-2-14.1, the defendant in this action is of a type enumerated by that statute.

[¶12.] Next, we must also determine whether the conduct alleged is of a type contemplated by SDCL 15-2-14.1. Pitt-Hart cites several cases holding that certain conduct of hospital employees does not fall within the ambit of medical malpractice. *See Moore v. Louis Smith Mem'l Hosp., Inc.*, 454 S.E.2d 190, 191 (Ga. Ct. App. 1995)

_____

(. . . continued)

worded inclusively—it broadly applies to *an action*. This inclusive statement is explicitly limited in only two ways. When the Legislature uses inclusive language indicating a broad range of conduct, it is not required to anticipate and individually address each subdivision of that conduct a party might imagine. Thus, the better view is that if the Legislature intended SDCL 15-2-14.1 to *exclude* vicarious liability, it could have easily said so.

(nursing-home resident fell while nursing assistant attempted to help the resident move from her wheelchair to her bed); *Brown v. Durden*, 393 S.E.2d 450, 451 (Ga. Ct. App. 1990) (patient suffering from seizures fell off examination table at doctor's office); *Candler Gen. Hosp., Inc. v. McNorrill*, 354 S.E.2d 872, 873 (Ga. Ct. App. 1987) (hospital patient fell while orderly attempted to remove patient from a stretcher); *Landes v. Women's Christian Ass'n*, 504 N.W.2d 139, 140 (Iowa Ct. App. 1993) (hospital patient fell in restroom after staff failed to accompany him); *Papa v. Brunswick Gen. Hosp.*, 517 N.Y.S.2d 762, 763 (N.Y. App. Div. 1987) (hospital patient fell out of bed); *Coursen v. N.Y. Hosp.–Cornell Med. Ctr.*, 499 N.Y.S.2d 52, 53 (N.Y. App. Div. 1986) (hospital patient fainted in restroom, unattended by nurse's aide); *Toledo v. Mercy Hosp. of Buffalo*, 994 N.Y.S.2d 298, 299 (N.Y. Sup. Ct. 2014) (hospital patient slipped on urine while walking to restroom); *Dawkins v. Union Hosp. Dist.*, 758 S.E.2d 501, 502 (S.C. 2014) (emergency-room patient fell in hospital restroom after staff failed to accompany her); *Peete v. Shelby Cty. Health Care Corp.*, 938 S.W.2d 693, 694 (Tenn. Ct. App. 1996) (hospital patient injured after hospital technician caused an orthopedic suspension bar to fall on her); *Franklin v. Collins Chapel Connectional Hosp.*, 696 S.W.2d 16, 17 (Tenn. Ct. App. 1985) (nursing-home resident suffered burns after orderly placed him in a hot bath).

[¶13.] The majority of the foregoing authorities do not discuss the distinction between malpractice and negligence in the context of timing requirements for filing an action; instead, they address the question whether expert testimony is required in cases where a medical professional is negligent in some ordinary way. More importantly, each of the foregoing cases discusses only what constitutes

malpractice.  In contrast, SDCL 15-2-14.1 applies to "[a]n action . . . for malpractice, error, mistake, *or* failure to cure[.]"  SDCL 15-2-14.1 (emphasis added).  This is true regardless of "whether [the action is] based upon contract *or* tort[.]"  *Id.* (emphasis added).  "[W]e assume that the Legislature intended that no part of its statutory scheme be rendered mere surplusage . . . ."  *Peters*, 2015 S.D. 4, ¶ 8, 859 N.W.2d at 622 (quoting *Faircloth v. Raven Indus., Inc.*, 2000 S.D. 158, ¶ 6, 620 N.W.2d 198, 201).  Therefore, the phrase *malpractice, error, mistake, or failure to cure* necessarily has a broader meaning than the term *malpractice* alone.  Even if we accept Pitt-Hart's authorities, then, they offer little guidance on the application of SDCL 15-2-14.1 to the facts of this case.

[¶14.]        In determining the meaning of the terms *error* and *mistake*, we first examine their plain, ordinary meanings.  SDCL 2-14-1; *Magellan Pipeline Co.* 2013 S.D. 68, ¶ 9, 837 N.W.2d at 404.  The term *error* means: "1. An act, an assertion, or a belief that unintentionally deviates from what is correct, right or true.  2. The condition of having incorrect or false knowledge.  3. *The act or an instance of deviating from an accepted code of behavior*.  4. A mistake."  *The Am. Heritage Coll. Dictionary* 467 (3d ed. 1997) (emphasis added).  The term *mistake* means: "1. An error or *a fault resulting from* defective judgment, deficient knowledge, or *carelessness*.  2. A misconception or misunderstanding."  *Id.* at 873 (emphasis added).  Thus, while SDCL 15-2-14.1 applies to a personal injury resulting from medical care (i.e., "[a]n action against a physician . . . for malpractice . . . based upon . . . tort"), it also seems to apply to a variety of other conduct involving unlicensed hospital personnel, such as a dispute regarding a bill

for hospital services (i.e., "[a]n action against a . . . hospital . . . for . . . error . . . based upon contract").

[¶15.]     In light of the broad range of conduct contemplated by SDCL 15-2-14.1, we conclude it applies to the action in the present case. Assuming for the purpose of summary judgment that Nygard dropped Pitt-Hart, such could easily be described as either a deviation from an accepted code of behavior (i.e., an error) or as a fault resulting from carelessness (i.e., a mistake). This decision does not require us to conclude that SDCL 15-2-14.1 applies to all negligence actions against a hospital. This is not a case of a nonpatient slipping on an icy sidewalk while walking past a hospital; instead, it involves a health-care technician who allegedly dropped a post-operative, knee-replacement patient contrary to standing orders that the patient required assistance to get out of bed. In other words, there is a nexus between the injury suffered by the plaintiff and the health care he received from the hospital. Therefore, Pitt-Hart's action is one against a hospital for error or mistake based upon tort, and SDCL 15-2-14.1 applies.

[¶16.]     Next, Pitt-Hart argues that even if SDCL 15-2-14.1 applies in this case, his action is not time barred by the statute's two-year period. He argues:

> The Doctrine of Estoppel may be applied to prevent a fraudulent or inequitable resort to a statute of limitations. The issue is whether the Plaintiff, by inequitable conduct on the part of the Defendant (usually fraud or misrepresentation), has been induced to alter his position to do that which he would not otherwise have done (i.e., refrained from commencing an action within the statutory period).

Pitt-Hart further contends that if his argument is successful, the effect is that SDCL 15-2-14.1's two-year period is tolled. This argument conflates principles of fraud, estoppel, and tolling. Additionally, both Pitt-Hart's and Sanford's references

to SDCL 15-2-14.1 as a "statute of limitation" require us to first address the nature of the two-year period defined in that statute.

[¶17.]    In *Peterson ex rel. Peterson v. Burns*, 2001 S.D. 126, ¶ 43, 635 N.W.2d 556, 571, we explicitly held that SDCL 15-2-14.1 is a statute of repose and not a statute of limitation.  Only two paragraphs later in the same decision, however, we reverted to referring to SDCL 15-2-14.1 as a statute of limitation.  *Peterson*, 2001 S.D. 126, ¶ 45, 635 N.W.2d at 571.  This inconsistency has persisted in almost all of our decisions involving SDCL 15-2-14.1.  *See, e.g.*, *Lewis*, 2013 S.D. 80, ¶ 25, 840 N.W.2d at 668 (referring to SDCL 15-2-14.1's two-year period as a "limitations period").  Yet, we have previously recognized that "the differences between statutes of limitations and statutes of repose are substantive, not merely semantic."  *Clark Cty. v. Sioux Equip. Corp.*, 2008 S.D. 60, ¶ 24, 753 N.W.2d 406, 415 (quoting *Burlington N. & Santa Fe Ry. Co. v. Poole Chem. Co.*, 419 F.3d 355, 362 (5th Cir. 2005)).  Thus, we take this opportunity to reexamine and clarify the operation of SDCL 15-2-14.1.

[¶18.]    There can be little doubt that *Peterson* correctly held that SDCL 15-2-14.1 is properly considered a statute of repose and not one of limitation.  "[A] statute of limitations creates 'a time limit for suing in a civil case, based on the date when the claim accrued.'"  *CTS Corp. v. Waldburger*, ___ U.S. ___, ___, 134 S. Ct. 2175, 2182, 189 L. Ed. 2d 62 (2014) (quoting *Black's Law Dictionary* 1546 (9th ed. 2009)); *Peterson*, 2001 S.D. 126, ¶ 41, 635 N.W.2d at 570.  "A statute of repose, on the other hand, . . . is measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant."  *CTS*

*Corp.,* ___ U.S. at ___, 134 S. Ct. at 2182.  The two-year period expressed in SDCL 15-2-14.1 does not begin when a cause of action accrues; it begins when the "alleged malpractice, error, mistake, or failure to cure shall have occurred[.]" SDCL 15-2-14.1.  Therefore, as we held in *Peterson*, the two-year period expressed in SDCL 15-2-14.1 is a period of repose.  *Compare* SDCL 15-2-14.1 ("An action . . . can be commenced only within two years after the alleged malpractice, error, mistake, or failure to cure shall have occurred . . . ."), *with* SDCL 15-2-14(3) ("[An action for personal injury] can be commenced only within three years after the cause of action shall have accrued . . . .").

[¶19.]      This conclusion is reinforced by our treatment of SDCL 15-2-14.1.  Even while incorrectly referring to SDCL 15-2-14.1 as a statute of limitation, we have preserved its function as a statute of repose in one important way.  "We have consistently held that [SDCL 15-2-14.1] is an occurrence rule, which begins to run when the alleged negligent act occurs, not when it is discovered."  *Beckel v. Gerber,* 1998 S.D. 48, ¶ 9, 578 N.W.2d 574, 576.  The reason SDCL 15-2-14.1 is an occurrence rule, however, is simply because it is a statute of repose, which by definition begins running upon the occurrence of a specified event rather than the discovery of a cause of action.

[¶20.]      While concluding that SDCL 15-2-14.1 is a statute of repose rather than a statute of limitation does not change the basic question of determining when the two-year period has expired in any given action, there are important differences in the subsequent analysis.  For the present action, the "critical distinction is that a repose period is fixed and its expiration *will not be delayed by estoppel or tolling*[.]"

*CTS Corp.*, ___ U.S. at ___, 134 S. Ct. at 2183 (emphasis added). Likewise, fraudulent concealment does not toll a period of repose. *First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989), *cert. denied*, 493 U.S. 1070, 110 S. Ct. 1113, 107 L. Ed. 2d 1020 (1990). "[A]fter the legislatively determined period of time, . . . liability will no longer exist and will not be tolled *for any reason*." 54 C.J.S. *Limitations of Actions* § 7 (2015) (emphasis added).

[¶21.]     The reason for this critical distinction lies in the different policy objectives underlying both types of statutes. "Statutes of limitations require plaintiffs to pursue 'diligent prosecution of known claims.'" *CTS Corp.*, ___ U.S. at ___, 134 S. Ct. at 2183 (quoting *Black's Law Dictionary* 1546 (9th ed. 2009)). "[W]hen an 'extraordinary circumstance prevents [a plaintiff] from bringing a timely action,' the restriction imposed by the statute of limitations does not further the statute's purpose." *Id.* (quoting *Lozano v. Montoya Alvarez*, ___ U.S. ___, ___, 134 S. Ct. 1224, 1231-32, 188 L. Ed. 2d 200 (2014)). In contrast, "[s]tatutes of repose effect a legislative judgment that a defendant should 'be free from liability after the legislatively determined period of time.'" *Id.* (quoting 54 C.J.S. *Limitations of Actions* § 7 (2010)). "[They] are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists." *First United Methodist Church*, 882 F.2d at 866. Thus, while tolling a *period of limitation* or estopping a party from asserting it as a defense may

-11-

be proper, tolling a *period of repose* or estopping a party from raising it as a defense subverts this legislative objective.  Therefore, principles of estoppel and tolling are inapplicable to a period of repose.

[¶22.]    In *Anson v. Star Brite Inn Motel*, 2010 S.D. 73, 788 N.W.2d 822, although we stopped short of recognizing that SDCL 15-2-14.1 has been incorrectly treated as a statute of limitation, we touched on the problem of applying tolling principles to it.  We recognized that "a very compelling argument can be made that equitable tolling cannot be recognized as a legal doctrine in South Dakota."  *Id.* ¶ 15 n.2, 788 N.W.2d at 825 n.2.  This recognition was based on the absolute language of the statute, which identifies it as a statute of repose.  SDCL 15-2-14.1 ("An action . . . can be commenced *only* within two years after the alleged [actionable conduct] shall have occurred . . . ." (emphasis added)); *CTS Corp.*, ___ U.S. at ___, 134 S. Ct. at 2183; *Peterson*, 2001 S.D. 126, ¶ 41, 635 N.W.2d at 570.  Our hesitancy to apply equitable tolling in *Anson* is easily explained as an unrealized recognition that SDCL 15-2-14.1 is a statute of repose and that, therefore, it is not subject to tolling.  *CTS Corp.*, ___ U.S. at ___, 134 S. Ct. at 2183; *First United Methodist Church*, 882 F.2d at 866.

[¶23.]    Finally, Pitt-Hart argues that even if the two-year period of repose applies, his action is timely under the continuous-treatment rule.  This Court, as well as other jurisdictions, has recognized two different versions of the continuous-treatment rule.  Under one version, the limitation period on an accrued cause of action may be tolled when a "medical practitioner . . . continue[s] 'to treat the patient *for the particular disease or condition created by the original act of alleged*

-12-

*negligence.'" Lewis*, 2013 S.D. 80, ¶ 23, 840 N.W.2d at 667 (emphasis added) (quoting *Liffengren v. Bendt*, 2000 S.D. 91, ¶ 17, 612 N.W.2d 629, 633). This rule applies only when the plaintiff receives "continuous treatment . . . by the *same* physician or clinic." *Liffengren*, 2000 S.D. 91, ¶ 17, 612 N.W.2d at 633. The rationale behind this rule is "to prevent the refusal to seek or administer health care due to pending litigation when treatment may be desperately needed." *Bosse v. Quam*, 537 N.W.2d 8, 10 (S.D. 1995); *see also Wells v. Billars*, 391 N.W.2d 668, 672 n.1 (S.D. 1986). It also affords a medical provider "the opportunity to correct the error before harm ensues." *Wells*, 391 N.W.2d at 672 n.1 (quoting 1 David W. Louisell & Harold Williams, *Medical Malpractice* § 13.08 (1981)).

[¶24.]     Pitt-Hart's action is not saved by the foregoing rule. The arguments against applying equitable tolling, estoppel, and fraudulent concealment to a period of repose apply with equal force to the tolling that would result from application of the continuous-treatment rule. *See CTS Corp.*, ___ U.S. at ___, 134 S. Ct. at 2183; *First United Methodist Church*, 882 F.2d at 866; 54 C.J.S. *Limitations of Actions* § 7 (2015). Thus, while the rule applies to a period of limitation, it does not apply to a period of repose like SDCL 15-2-14.1. Even if the rule did apply, it is undisputed that Pitt-Hart received treatment from two providers unaffiliated with Sanford—let alone the same physician or clinic—after his discharge from Sanford on November 13, 2009. Therefore, the continuous-treatment rule *cannot* toll SDCL 15-2-14.1's two-year period of repose, nor should it under the facts of this case.

[¶25.]     The second version of the continuous-treatment rule is simply a mislabeled application of the continuing-tort doctrine. "Generally, when a tort

involves a continuing injury, the cause of action accrues and the statute of limitations commences when the wrong terminates." *Alberts v. Giebink*, 299 N.W.2d 454, 456 (S.D. 1980). In the context of medical malpractice, this doctrine applies when harm is the cumulative effect of several treatments rather than the result of a single act. *Wells*, 391 N.W.2d at 672 n.1. However, the doctrine does not apply when "a patient is able to identify the specific negligent treatment that caused [his or her] injury[.]" *Roberts v. Francis*, 128 F.3d 647, 651 (8th Cir. 1997); *Wells*, 391 N.W.2d at 672 n.1; 70 C.J.S. *Physicians & Surgeons* § 141 (2015).

[¶26.]     While the continuous-treatment rule does not apply to a statute of repose, the continuing-tort doctrine does. "When the cumulative result[] of continued negligence is the cause of the injury, the statute of repose cannot start to run until the last date of negligent treatment." *Cunningham v. Huffman*, 609 N.E.2d 321, 325 (Ill. 1993); *Wells*, 391 N.W.2d at 672 n.1. This is true because the repose period "is measured . . . from the date of the last culpable act or omission of the defendant." *CTS Corp.*, ___ U.S. at ___, 134 S. Ct. at 2182. Thus, although a period of repose will not be tolled for any reason *once commenced*, *id.* at ___, 134 S. Ct. at 2183, such a period may be *delayed from commencing* if a plaintiff "demonstrate[s]: (1) that there was a continuous and unbroken course of negligent treatment, and (2) that the treatment was so related as to constitute one continuing wrong." *Cunningham*, 609 N.E.2d at 325. Pitt-Hart does not allege his injury resulted from a continuous and unbroken course of negligent conduct; rather, Pitt-Hart's complaint alleges his injury was caused solely by being dropped. Because Pitt-Hart's injury resulted from a single, identifiable act and not from a continuing

course of negligent treatment, the tort alleged was complete on November 11, 2009. Therefore, Pitt-Hart's action became time barred by SDCL 15-2-14.1 nearly one year before he commenced this action.

## Conclusion

[¶27.] Pitt-Hart's action against Sanford is one for error or mistake. Therefore, SDCL 15-2-14.1's two-year period of repose applies. Today we correct the past practice of referring to SDCL 15-2-14.1 as a statute of limitation in contravention of its status as a statute of repose. *See CTS Corp.*, ___ U.S. at ___, 134 S. Ct. at 2182; *Peterson*, 2001 S.D. 126, ¶ 41, 635 N.W.2d at 570. However, the analysis of our previous malpractice cases remains largely undisturbed. Legal concepts such as fraudulent concealment, estoppel, and equitable tolling are still applicable to *statutes of limitation*, and the continuing-tort doctrine is applicable to both statutes of limitation and repose.[3] Even so, the Legislature's creation of a two-year period of repose in SDCL 15-2-14.1 essentially renders such tolling moot for any limitation period of two years or longer. As we said in *Peterson*: "The policy of the Legislature is clearly to make SDCL 15-2-14.1 a statute of repose. . . . If the

---

3. In this case, it appears that the applicable statute of limitation is SDCL 15-2-14(3), which states that an action for a personal injury "can be commenced only within three years after the cause of action shall have accrued[.]" Because we reaffirm that SDCL 15-2-14.1 is a statute of repose, there is no conflict between it and SDCL 15-2-14(3). However, SDCL 15-2-14.1 would control even if it was a statute of limitation. "A rule of statutory construction is that the more specific statute governs the more general statute." *Peterson*, 2001 S.D. 126, ¶ 28, 635 N.W.2d at 567. "Another rule of statutory construction is that the more recent statute [supersedes] the older statute." *Id.* ¶ 29, 635 N.W.2d at 567. Because SDCL 15-2-14.1 is both more specific and more recently modified than SDCL 15-2-14(3), SDCL 15-2-14.1's two-year period would apply to Pitt-Hart's action even if SDCL 15-2-14.1 was a statute of limitation.

-15-

policy is to be changed, the Legislature, not this Court, should make the change."

2001 S.D. 126, ¶ 43, 635 N.W.2d at 571.

[¶28.]     We affirm.

[¶29.]     ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.