#28024-aff in part & rev in part-DG
**2017 S.D. 80**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

VARNER BEALS,                              Plaintiff and Appellant,

    v.

AUTOTRAC, INC.,                            Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
GREGORY COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN L. BROWN
Judge

\* \* \* \*

BRAD A. SCHREIBER
Pierre, South Dakota                       Attorney for plaintiff and
                                           appellant.


PAMELA R. REITER
RONALD A. PARSONS JR. of
Johnson, Janklow, Abdallah,
 Reiter & Parsons LLP
Sioux Falls, South Dakota                  Attorneys for defendant and
                                           appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 28, 2017
OPINION FILED **11/21/17**

#28024

GILBERTSON, Chief Justice

[¶1.] Varner Z. Beals appeals the circuit court's grant of summary judgment in favor of AutoTrac Inc. on Beals's claims of deceit, fraud, and undue influence. Beals argues there are genuine disputes of material fact that preclude summary judgment. We affirm in part, reverse in part, and remand.

**Facts and Procedural History**

[¶2.] AutoTrac Inc. is a manufacturing company located in Fairfax, South Dakota. John Parsons founded AutoTrac as a sole proprietorship focused on automotive and farm-equipment repair. After Parsons's cousin Dennis Howard became involved in the company, AutoTrac's focus shifted to manufacturing. In 2008, AutoTrac was incorporated as a subchapter S corporation. Howard serves as AutoTrac's president and chief executive officer. Currently, the company has four full-time employees.

[¶3.] After incorporation, AutoTrac devised a plan to diversify and expand its operations. AutoTrac's banker advised that such a plan required $500,000 in capital investments. On February 3, 2012, AutoTrac's board of directors passed a resolution authorizing the creation and sale of 200 shares of Class A stock at $2,500 per share. Parsons and Howard began looking for potential investors.

[¶4.] At the time of briefing, Varner Beals was an 83-year-old resident of Fairfax. Beals began consulting with a physician in 2008 for memory loss and was eventually diagnosed with a type of dementia. Even so, Beals lived alone and managed his own financial affairs. Beals also owned and operated a successful bee business, collecting and selling honey and related products, which he sold in 2014.

-1-

Parsons had previously transported Beals's product to customers in Iowa. Sometime after the February 3 meeting of AutoTrac's board of directors, Parsons and Beals met to discuss the possibility of Beals investing in AutoTrac. At some point following the meeting, Beals began paying money to AutoTrac. By January 2013, Beals had paid $100,000 to AutoTrac.

[¶5.] On February 8, 2013, Beals signed an agreement with AutoTrac, promising to purchase 200 shares of Class A stock for $500,000. The agreement acknowledged Beals's previous $100,000 contribution and required two additional payments of $200,000 each. The first $200,000 payment was due by March 30, 2013. Under the agreement, AutoTrac was required to use Beals's money only "for the construction of an expansion to the existing facility and the acquisition of capital equipment to do more/bigger work available from existing AutoTrac, Inc. customers." The agreement specifically prohibited AutoTrac from using Beals's money to pay existing debts. Finally, the agreement provided:

> Until all financial commitments by Mr. Beals . . . have been satisfied, AutoTrac, Inc. will consider Mr. Beals' investment(s) as intended for the purchase of a lesser class of AutoTrac, Inc. stock (i.e., NOT Class A stock) with proportionally lesser rights and privileges. The precise definition of said lesser rights and privileges to be determined by the Board Of Directors and assigned, in part, by Mr. Beals' total investment sum.

[¶6.] On February 10, 2013, AutoTrac's board of directors passed another resolution that recognized the signed agreement with Beals. Because Beals agreed to pay the $500,000 in installments, the resolution modified the February 3, 2012 resolution, prohibiting the issuance of any stock "until all of the terms of the Working Agreement have been satisfied." AutoTrac's board also authorized hiring an attorney to assist "in drafting the language for the SD Secretary of State filing,

and amendments to all the necessary formal documents, in order that there be no delay in executing corporate responsibilities for the issuance of stock through the Working Agreement with Varner Z. Beals."

[¶7.]    During the February 10, 2013 meeting, AutoTrac's board also instructed Parsons and Howard to develop a plan "for facility expansion and capital equipment purchase, working to a budget of $500,000." The board required the plan to "include all planned expenses, and an expense timeline scheduled to match receipt of contributions from Varner Z. Beals based on the dates in the Working Agreement." One of Parsons and Howard's first objectives was to expand AutoTrac's facilities. In furtherance of this objective, Parsons and Beals visited an existing facility in Howard, South Dakota, that was owned by the State. AutoTrac made an offer to purchase the property, but the State rejected the offer.

[¶8.]    In the meantime, two of Beals's sons, Jim and Rob, learned of their father's relationship with AutoTrac. While Jim was visiting South Dakota, he visited AutoTrac and informed Parsons that AutoTrac would not receive any additional money from Beals. In addition to the initial $100,000, Beals had paid another $100,000 toward the $200,000 due by the March 30, 2013 deadline. On January 11, 2014, AutoTrac's board of directors met to address Beals's failure to meet the March 30, 2013 payment deadline. The board decided that in light of receiving only $200,000 from Beals instead of $500,000, it would "scale down the plan for facility expansion and capital equipment purchase not-to-exceed a total of $180,000, making no further commitments to contractors and/or vendors, until such time as Varner Z. Beals continued contribution intentions are known."

[¶9.]     On February 9, 2015, Jim Beals, acting under power of attorney, filed a complaint on Beals's behalf against AutoTrac, alleging numerous claims relating to the agreement entered into by Beals and AutoTrac. While Beals claims he does not remember signing the agreement, he acknowledges that his signature is on it. The complaint primarily alleged that Beals had been deceived into giving money to AutoTrac. On February 14, AutoTrac's board of directors met to address the lawsuit. The board viewed Beals's lawsuit as a definitive signal of his intention to repudiate the agreement. Pursuant to the agreement with Beals, the board passed a resolution that required AutoTrac to immediately amend its articles of incorporation to create Class B shares of stock and to issue 80 such shares to Beals.

[¶10.]     On July 22, 2016, AutoTrac filed a motion for summary judgment. After a hearing on September 14, the circuit court granted the motion on September 28. Beals appeals, raising the following issues:

> 1.     Whether the circuit court erred by granting summary judgment on Beals's claim of deceit.
>
> 2.     Whether the circuit court erred by granting summary judgment on Beals's claim of fraud.
>
> 3.     Whether the circuit court erred by granting summary judgment on Beals's claim of undue influence.[1]

**Standard of Review**

[¶11.]     Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

---

1.     Beals states the issues as claims of deceit, rescission, and fraud. However, rescission is a remedy—not a cause of action—available in contract cases involving duress, fraud, or undue influence (among other occurrences). SDCL 53-11-2. The issues stated here reflect the substance of Beals's arguments.

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). "We view the evidence 'most favorably to the nonmoving party and resolve reasonable doubts against the moving party. If there exists any basis which supports the ruling of the [circuit] court, affirmance of a summary judgment is proper.'" *Gades v. Meyer Modernizing Co.*, 2015 S.D. 42, ¶ 7, 865 N.W.2d 155, 158 (citation omitted) (quoting *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 5, 859 N.W.2d 618, 621).

### Analysis and Decision

[¶12.]    Beals argues the circuit court erred in entering summary judgment on his tort claim of deceit and his contract claims of fraud and undue influence. Beals contends Parsons deceived him by exaggerating the financial status and viability of AutoTrac. He also asserts that AutoTrac owed $100,000 and that Parsons and Howard's failure to disclose that fact was fraudulent.[2] Finally, Beals asserts that he suffers from dementia, that Parsons was aware of his affliction, and that Parsons nevertheless persisted in soliciting money for AutoTrac. Because Beals has the burden of proof as to each element of his stated causes of action, the failure to establish a genuine dispute of material fact as to a single required element means summary judgment was appropriate as to that claim.

---

2.    AutoTrac points out that Beals did not plead in his complaint that Parsons exaggerated AutoTrac's financial condition or that Howard failed to disclose an alleged debt. In Beals's complaint, the basis for his deceit and fraud claims was his allegation that at the time he signed the agreement with AutoTrac, Class B stock did not exist. Because we are unpersuaded by the argument Beals raises on appeal anyway, we do not address this issue.

[¶13.]     ***1.     Whether the circuit court erred by granting
              summary judgment on Beals's claim of deceit.***

[¶14.]     Beals argues Parsons deceived him by exaggerating the financial

status and viability of AutoTrac.  The tort of deceit is established in SDCL

chapter 20-10.  "One who willfully deceives another, with intent to induce him to

alter his position to his injury or risk, is liable for any damage which he thereby

suffers."  SDCL 20-10-1.

> A deceit within the meaning of § 20-10-1 is either:
>
> (1) The suggestion, as a fact, of that which is not true, by one
>     who does not believe it to be true;
>
> (2) The assertion, as a fact, of that which is not true, by one
>     who has no reasonable ground for believing it to be true;
>
> (3) The suppression of a fact by one who is bound to disclose
>     it, or who gives information of other facts which are likely
>     to mislead for want of communication of that fact; or
>
> (4) A promise made without any intention of performing.

SDCL 20-10-2.  In his initial brief to this Court, Beals generally cites to SDCL 20-

10-2 but does not specify which subdivision he thinks supports his argument.  In his

reply brief, however, he specifically points to SDCL 20-10-2(1).

[¶15.]     Summary judgment on Beals's deceit claim was appropriate under

SDCL 20-10-2(1).  The word *suggestion* means: "An indirect presentation of an

idea."  *Black's Law Dictionary* (10th ed. 2014).  In order to qualify as deceit, this

idea must be held out as "[s]omething that actually exists[,]" *Fact*, *Black's Law*

*Dictionary* (10th ed. 2014), even though the idea is false and the person making the

suggestion believes the idea to be false.  In other words, SDCL 20-10-2(1)

contemplates the indirect presentation of a false idea as true by one who believes

the idea to be false.  When pleading a claim of deceit under SDCL 20-10-2(1), then,

the first step must be to specify the idea at issue. "[W]hen challenging a summary judgment, the nonmoving party must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Peters*, 2015 S.D. 4, ¶ 13, 859 N.W.2d at 624 (quoting *Estate of Elliott ex rel. Elliott v. A & B Welding Supply Co.*, 1999 S.D. 57, ¶ 16, 594 N.W.2d 707, 710). Here, Beals's conclusion that Parsons "exaggerated" is not supported by specific, factual allegations that would permit a jury to infer the same without resort to speculation.

[¶16.]     Moreover, Beals's own testimony precludes him from ultimately prevailing on his deceit claim. Beals testified in his deposition as follows:

> **[AutoTrac's Attorney]**: Do you think that [Parsons] lied to you in getting you to make investments in AutoTrac?
>
> **[Beals]**: No, I don't think he lied; but he just exaggerated.
>
> **[AutoTrac's Attorney]**: Okay.
>
> **[Beals]**: Made things look like it was going to be a lot better than what it was. And *I think he was sincere about it, but he was wrong.*
>
> **[AutoTrac's Attorney]**: So he was being optimistic about the future—
>
> **[Beals]**: Yes. Yeah.
>
> **[AutoTrac's Attorney]**: —but in your opinion, he just wasn't— he just didn't know what he was talking about? Or do you think he meant to lie to you?
>
> **[Beals]**: I think a lot of it was the companies he was dealing with did a lot of exaggerating, too.
>
> . . . .
>
> **[AutoTrac's Attorney]**: Okay. So you thought [Parsons] was being sincere with you?
>
> **[Beals]**: Yeah . . . .
>
> . . . .
>
> [Parsons] didn't lie to me, no.

**[AutoTrac's Attorney]**: Okay. All right. So let's—

**[Beals]**: Some of the stuff didn't work out like he thought, but no.

**[AutoTrac's Attorney]**: And that happens sometimes. Right?

**[Beals]**: Yeah.

Thus, even if Beals is correct that the unspecified, suggested financial forecast of AutoTrac was false, Beals's deposition testimony indicates that Parsons sincerely believed it was true. Beals "cannot now rely on a better version of the facts than the one he adhered to during his own deposition testimony." *Guilford v. Nw. Pub. Serv.*, 1998 S.D. 71, ¶ 12, 581 N.W.2d 178, 181. Therefore, Beals's own deposition testimony necessarily defeats his deceit claim.

[¶17.]    Because Beals is the plaintiff and has the burden of proof as to each element of his deceit claim, each of the foregoing points of analysis is singularly sufficient to affirm summary judgment on Beals's deceit claim. Beals's conclusory allegation that Parsons exaggerated is not supported by specific, factual assertions. Even if it were, Beals admitted that Parsons sincerely believed the suggestion at issue. Therefore, summary judgment was appropriate on Beals's deceit claim.

[¶18.]    ***2.      Whether the circuit court erred by granting summary judgment on Beals's claim of fraud.***

[¶19.]    Next, Beals argues AutoTrac committed fraud by failing to disclose an alleged debt of $100,000.[3] An action for fraud is established in SDCL chapter 53-4.

> Actual fraud in relation to contracts consists of any of the
> following acts committed by a party to the contract, or with his

---

3.    Beals also repeats his argument regarding Parsons's alleged exaggeration of AutoTrac's financial condition, claiming such also amounts to fraud. Because the text of SDCL 20-10-2(1) is virtually identical to the text of SDCL 53-4-5(1), Beals's fraud claim regarding Parsons fails for the same reasons discussed above.

connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

> (1) The suggestion as a fact of that which is not true by one who does not believe it to be true;
>
> (2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true;
>
> (3) The suppression of that which is true by one having knowledge or belief of the fact;
>
> (4) A promise made without any intention of performing it; or
>
> (5) Any other act fitted to deceive.
>
> Actual fraud is always a question of fact.

SDCL 53-4-5.[4] Beals does not specify which subdivision applies to his argument, but his suggestion that AutoTrac should have disclosed an alleged debt implicates SDCL 53-4-5(3) (suppression of a fact).

[¶20.] Summary judgment was appropriate on Beals's fraud claim. Similar to his deceit claim, Beals fails to assert specific facts supporting his conclusory allegation that AutoTrac failed to disclose a debt. Even if we assume that Beals's conclusory allegation is correct, "this Court has never imposed a duty to disclose information on parties to an arm's-length business transaction, *absent an employment or fiduciary relationship.*" *Schwartz v. Morgan*, 2009 S.D. 110, ¶ 12, 776 N.W.2d 827, 831 (quoting *Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 499 (S.D. 1990)). Moreover, failing to disclose a fact is not the same as suppressing a fact. The word *suppress* means "[t]o put a stop to, put down, or prohibit; to prevent (something) from being seen, heard, known, or discussed." *Black's Law Dictionary* (10th ed. 2014). Thus, the word *suppression* implies an active effort to

---

4. "Fraud is either actual or constructive." SDCL 53-4-4. Beals does not argue AutoTrac's conduct amounts to constructive fraud, which is defined under SDCL 53-4-6.

conceal information rather than simply failing to disclose information another person might find interesting. Beals does not cite to any relevant portion of the record indicating that he asked for details of AutoTrac's existing debts, let alone that AutoTrac suppressed such information. In the absence of such assertions, AutoTrac was entitled to summary judgment on this claim.

[¶21.]     ***3.     Whether the circuit court erred by granting summary judgment on Beals's claim of undue influence.***

[¶22.]     Finally, Beals argues Parsons took advantage of his age and medical condition in convincing Beals to invest in AutoTrac.

> Undue influence consists:
>
> (1) In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; or
>
> (2) In taking an unfair advantage of another's weakness of mind; or
>
> (3) In taking a grossly oppressive and unfair advantage of another's necessities or distress.

SDCL 53-4-7. In particular, Beals contends SDCL 53-4-7(2) applies.

[¶23.]     Summary judgment was not appropriate on Beals's undue-influence claim. As noted above, undue influence occurs when one party to a contract takes "advantage of another's weakness of mind" in inducing him to enter into the contract. SDCL 53-4-7(2). AutoTrac asserts that "[n]either Parsons nor Howard had any idea that [Beals], who was running a successful business, had any health issues at all." However, Beals asserts he was suffering the effects of dementia as early as 2008. Beals's son, Rob, testified in his deposition that during a phone conservation with Parsons, he said: "*Dad's not all there*, and you need to go through

me before you go through Dad . . . ." (Emphasis added.) Thus, in his initial brief to this Court, Beals asserts: "Parsons knew that [Beals] was elderly and unable to take care of himself when [Parsons] approached [Beals] about the need for money." Considered in a light most favorable to Beals, these factual assertions raise a genuine dispute of material fact as to whether Beals had a "weakness of mind" that Parsons exploited. The circuit court erred by granting summary judgment on Beals's undue-influence claim.

## Conclusion

[¶24.]       Beals failed to establish a genuine dispute of material fact in regard to his tort claim of deceit and his contract claim of fraud. However, there is a genuine, factual dispute regarding whether Parsons took unfair advantage of Beals's dementia in convincing him to invest in AutoTrac. Therefore, we affirm the circuit court's grant of summary judgment in regard to Beals's tort claim of deceit and his contract claim of fraud. We reverse the court's grant of summary judgment on Beals's contract claim of undue influence, and we remand.

[¶25.]       ZINTER, SEVERSON, and KERN, Justices, and WILBUR, Retired Justice, concur.

[¶26.]       JENSEN, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.